## WALTERS et al. v. PRAIRIE OIL & GAS CO. et al.

No. 10530—Opinion Filed Feb. 14, 1922.

(Syllabus.)

1. **Negligence — Concurring Negligence —Liability.**

Where, although concert is lacking, the separate and independent acts, or negligence of several combine to produce directly a

single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it.

**2. Same—Waters and Water Courses—Damages for Pollution of Stream—Burden of Proof.**

Where a riparian landowner sues a group of separate leaseholders for damages for polluting a stream, and the evidence shows that part of the damage inflicted was occasioned by the defendants, and part by a tenant of the plaintiff, not a party to the action, either with the plaintiffs' consent or as the result of the ordinary use of the premises by the tenant, the plaintiff will not be entitled to recover from the defendants sued, unless he is able to produce evidence which will enable the court to separate the amount of damage inflicted by the group of defendants sued from the amount of damage resulting from the acts of the tenant and to enter judgments against the defendants for the damage thus shown.

**3. Same—Sufficiency of Evidence.**

Record examined and held, that, in the circumstances set out in this opinion, the trial court did not err in sustaining a demurrer to plaintiffs' evidence.

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by Squire Walters and others against the Prairie Oil & Gas Company and others for damages for pollution of stream. Judgment for defendants, and plaintiffs bring error. Affirmed.

William M. Matthews, for plaintiffs in error.

T. J. Flannelly and Fred M. Carter, for defendant in error Prairie Oil & Gas Company.

James B. Diggs, Rush Greenslade, and William C. Liedtke, for defendant in error Gypsy Oil Company.

West, Sherman, Davidson & Moore, for defendant in error Pierce Oil Corporation.

KANE, J. This was an action for damages for polluting a stream commenced by the plaintiffs, as riparian landowners, against the defendants, Prairie Oil and Gas Company, Gypsy Oil Company, and Pierce Oil Corporation.

The petition of the plaintiffs alleged, in substance, that the defendants, Prairie Oil & Gas Company, Pierce Oil Corporation, and the Gypsy Oil Company, own and operate separate oil and gas leases bordering upon Graves creek, the stream in question, and that the plaintiffs sustained damage on account of the acts of the defendants in allowing salt water and refuse oil from their oil wells to escape into said stream, which runs through the land of the plaintiffs, thereby injuring said land in the sum of $2,900.

The pertinent part of the defendants' separate answers, after general denials, alleges, in substance, that during all of the times which plaintiffs allege the defendants herein have caused the pollution of said stream and damage complained of, the plaintiffs, themselves, have been causing or permitting salt water and refuse from oil wells on plaintiffs' land to flow into said stream or creek, thereby causing the greater part of the damage of which plaintiffs complain in their petition, and for which they are seeking to hold these defendants responsible in damages. The reply was a general denial. After the evidence of the plaintiffs was all in, the trial court sustained a demurrer thereto and entered judgment in favor of the defendants for costs, to reverse which this proceeding in error was commenced.

Before reviewing the action of the trial court in sustaining the demurrer to the evidence it will greatly simplify matters and narrow the scope of inquiry to state that the case was commenced upon the theory that the plaintiffs are entitled to recover under the rule announced by this court in Northup et al. v. Eakes et al., 72 Oklahoma, 178 Pac. 266, City of Cushing v. High, 73 Oklahoma, 175 Pac. 229, and other cases of like import and that counsel for defendants concede the correctness of the rule announced in these cases, but say that, notwithstanding the evidence may have shown that the defendants polluted the stream as alleged, other and additional facts developed at the trial take this case out of the rule invoked.

In view of this, it will only be necessary to notice the circumstances which it is claimed distinguish this from the other cases. The facts necessary to present these various contentions may be briefly summarized as follows: The plaintiffs are the owners of the land described in their petition; about the year 1911, they dug a ditch from low, marsh or swamp land on their farm, connecting the same with Graves creek so as to drain the surface water from this swamp land into the creek, and each year thereafter they maintained this drainage ditch, and kept the same open so that the water could drain from the swamp land across their farm into Graves creek, at a point where the creek flowed through their land; that about the year 1912, and after this drainage ditch was completed, the plaintiffs leased their farm to the Walters Oil Company for oil and gas mining purposes; that early in the year 1912, the

Walters Oil Company commenced drilling wells upon plaintiffs' land for oil and gas, and drilled in all about 18 wells, 12 of which were producing oil or gas at the time this case was tried; that the defendants, whose leases covered land located a short distance up the creek from plaintiffs' farm. commenced the development of their leases for oil and gas in the year 1912, and about the same time the oil development was begun on plaintiffs' land. That during all of this time, and up to the date of the trial of the case, plaintiffs continued in the possession of their land, lived upon it, farmed it, and had the absolute and exclusive control and possession of the entire tract, except the right and possession of the Walters Oil Company in the development and operation of its oil lease. The wells operated by the Walters Oil Company, on plaintiffs' land, produced salt water and waste oil just like the wells operated by defendants on their leases; that the Walters Oil Company cut a ditch from their wells and connected the same with the drainage ditch that had been previously dug by plaintiffs so that the salt water and waste oil from the wells of the Walters Oil Company flowed into the ditch that had been dug by the plaintiffs, and was then being maintained and kept open by the plaintiffs from the swamp land on their farm into Graves creek. The plaintiffs had the exclusive control over this drainage ditch from the swamp land to Graves creek, and during the years 1912-13, and up to the trial of the case, plaintiffs kept this drainage ditch across their farm open and through it they caused all of the salt water and waste oil that came from these 18 wells on their farm to flow into Graves creek; that this salt water and waste oil mingling with the salt water and waste oil from defendants' wells caused the pollution and damage complained of; that while there was evidence tending to show the total amount of damage sustained, there was no attempt on the part of the plaintiffs to show the separate amount of damage inflicted by either the defendants or the plaintiffs' tenant.

Counsel for plaintiffs in his brief sets forth his view as to the questions of law arising out of the foregoing state of facts as follows:

"If the plaintiffs were joint tort-feasors, they ought not to recover. If they are not joint tort-feasors. the action of the court in sustaining a demurrer to their evidence was erroneous. The question for this court to decide is whether or not a landlord is liable for a nuisance created by his tenant. and whether or not such a nuisance makes the landlord a joint tort-feasor with the tenant."

In support of the proposition thus stated counsel cites Langabaugh et al. v. Anderson, 68 Ohio St. 131, 67 N. E. 286; Joseph Schlitz Brewing Co. v. Shiel (Ind.) 88 N. E. 957, and other cases holding that merely permitting another to commit a nuisance does not render one liable for its consequences; that in order to charge the landlord, the nuisance must necessarily result from the ordinary use of the premises by the tenant, or for the purposes for which they were let; or, in other words, where the use of the premises may or may not become a nuisance, according as the tenant exercises reasonable care or uses the premises negligently, the tenant alone is chargeable for the damages arising from his acts.

We are unable to agree with counsel, either in his theory as to the question of law involved, or the applicability of the cases cited to the situation presented by the foregoing summary of the facts. If this were an action by another riparian landowner against the plaintiffs or their tenant, or against them jointly, or by the plaintiffs against their tenant for polluting the stream, the authorities cited possibly would be helpful. But, as we have seen, this is an action commenced by the plaintiffs against a certain group of separate lessees for polluting the stream, and the evidence not only shows that the defendants polluted the stream as alleged, but that plaintiffs' tenant, who was not sued, also polluted the stream and inflicted part of the consequent injury to plaintiffs' land, either with the consent of the plaintiffs or as the result of the ordinary use of the premises for the purposes for which they were held. In these circumstances, it is obvious that, though damage may have resulted to the landlord from the acts of his tenant, neither the landlord nor his tenant was a joint tort-feasor as against the other. On the other hand, neither the license of the landlord to his tenant nor the injurious acts of the latter in pursuance of such license entitled the other separate leaseholders to pollute the stream to the landowner's injury. In such a case the plaintiff, if his evidence was sufficiently definite, would be entitled to recover under the rule laid down in Northup v. Eakes, supra, as follows:

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it."

But this ruling being a liberal exception in favor of riparian owners to the general

rule that to make tort-feasors liable jointly there must be some sort of community in the wrongdoing, that is, that injury must be in some way due to their joint work, it ought not to be extended to the point of working injustice.

Applying these principles to the case at bar, we have this situation: The plaintiffs sued jointly certain separate leaseholders for damages for polluting the stream under the principle announced in Northup v. Eakes, supra, and the evidence produced by the plaintiffs shows not only that the defendants polluted the stream as alleged, but that their tenant, engaged in the same business, also polluted the stream in a like manner with the consent of his landlord, or that such pollution resulted from the ordinary use of the premises by the tenant, without showing or attempting to show the damage that resulted from the acts of each group of lessees.

We have no hesitation in saying that this evidence was not sufficient to support a judgment against the defendants. To permit a recovery in these circumstances would be to allow the plaintiffs to mulct the defendants in damages not only for their own acts, but for the acts of plaintiffs' tenant committed in the circumstances hereinbefore stated. While we do not find any of the authorities cited by counsel in their respective briefs to be exactly in point on the precise question thus presented, we lay it down with confidence as a sound elementary principle of justice that where a riparian landowner sues a group of separate leaseholders for damages for polluting a stream, and the evidence shows that part of the damage inflicted was occasioned by the defendants and part by a tenant of the plaintiff, not a party to the action, either with the plaintiff's consent or as the result of the ordinary use of the premises by the tenant, the plaintiff will not be entitled to recover from the defendants sued, unless he is able to produce evidence which will enable the court to separate the amount of damage inflicted by the group of defendants sued from the amount of damages resulting from the acts of the tenant, and to enter judgment against the defendants for the damages thus shown.

Because the evidence was deficient in this respect, the trial court was right in sustaining the demurrer thereto, and the judgment entered is therefore affirmed.

PITCHFORD, V. C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.