## TIDAL OIL CO. et al. v. PEASE et al.

No. 19971. Opinion Filed Nov. 24, 1931.

West, Gibson, Sherman, Davidson & Hull, James Patrick Gilmore, Charles W. Grimes, Y. P. Broome, and W. P. McGinnis, for plaintiffs in error.

Randolph, Haver, Shirk & Bridges, for defendants in error.

RILEY, J. This is an action commenced by defendants in error, hereinafter referred to as plaintiffs, against plaintiffs in error, hereinafter referred to as defendants, to recover damages on account of alleged pollution of the stock water supply in certain lands, a part of which plaintiffs claimed to own, and a part of which they claimed to have leased, or to have had peaceable and quiet possession of with the consent of the owner, all comprising a pasture of approximately 3,000 acres, consisting of:

The S. ½, of section 36, township 21, range 11; the S. ½ of section 31, and the S. ½ of the N. W. ¼ and the S. ½ of the N. E. ¼ of section 31, township 21, range 12; the S. W. ¼ and the S. W. ¼ of the N. W. ¼ of section 32, township 21, range 12; the N. ½ of section 6, and the N. ½ of the S. E. ¼ of section 6, and the S. E. ¼ of the S. E. ¼ of section 6, township 20, range 12; all of section 5, township 20, range 12; the S. ½ of the S. W. ¼ of section 4, township 20, range 12; the N. E. ¼ of section 7, and the S. ½ of the N. W. ¼ of section 7, township 20, range 12; the N. ½ of section 8, township 20, range 12; and the N. W. ¼ of section 9, township 20, range 12, all in Osage county, Okla.

They charge that during the years 1926-27, defendants, in violation of section 6526 and section 7969, C. O. S. 1921, caused and permitted oil, salt water, and other deleterious substances to escape from their oil mining operations and run over the surface of the land and run into draws and creeks located on or adjacent to the lands upon which the defendants were operating, which draws and creeks were the water supply for cattle grazed by plaintiffs within said pasture; that 331 head of steers belonging to plaintiffs were injured by drinking the water thus polluted during 1926, in loss of flesh, appearance, class, and condition to the extent of $20 per head, to their damage in the sum of $6,620; that during 1927, 20 head of plaintiffs' cattle of the value of $70 each died from the effects of drinking salt water; that in 1926, plaintiffs were compelled to lease certain pasture at a cost of $750; that in 1927, they lost ten head of two-year-old cattle, each of the value of $20; that the same year they lost four cows of the value of $50 each, and five horses of the value of $20 each, and that 20 head of their milk cows were damaged $20 each in loss of flesh and appearance and in the amount of milk produced, all due to the said stock drinking salt water from said ponds and streams; that during 1927, they lost an opportunity to pasture some 800 head of cattle for other parties at $6 per head to their damage in the sum of $4,800. They alleged that the negligent, wrongful, and unlawful acts of the defendants were so combined, concurrent, joint in commission and consummation and effect as to be incapable of separation. They prayed for judgment in the total sum of $14,470.

Each defendant answered separately by general denial.

At the close of plaintiffs' evidence the court sustained a demurrer thereto as to the item claimed for loss of opportunity to pasture 800 head of cattle for other parties, thus eliminating $4,800 of plaintiffs' claim. Further on in the trial the court withdrew the item of $750 claimed for other pastures rented, and plaintiffs withdrew their claim of injury to their dairy cows, $400, thus leaving plaintiffs' claim limited to damages for 331 head of steers, $20 each, 20 head of cattle they claimed died, of the value of $70 each, ten head of two-year-old cattle they claim died, at $20 each, four cows, $50 each, and five horses at $20 each, which they claimed died.

The verdict was for plaintiffs against defendants in the sum of $4,250.

Defendants filed separate motions for new trial, which were overruled, and all defendants appeal.

We consider first the assignments of error applying only to the defendant Tidal Oil Company. This defendant joins in the general brief and also files separate briefs. At the close of plaintiffs' evidence, the Tidal Oil Company demurred separately and renewed their separate demurrer at the close of all the evidence, and moved the court to direct a verdict in their favor. Separate demurrers and motions for directed verdict were overruled. In this we think there was error. There is no evidence whatever to show that the Tidal Oil Company had any interest whatever in the oil leases or operations of any of the other defendants. The only land that this defendant was operating upon that was claimed to be within the 3,-000-acre pasture was the S. ½ of the N. W. ¼ of section 31, township 21 N., range 12 E., in the extreme northwest corner of the so-called pasture. It was operating upon no other land from which salt water could possibly drain into or upon lands within said pasture. Furthermore, there was no evidence whatever that the Tidal Oil Company at any time permitted any oil or salt water to escape from wells they were operating, either within or without the pasture. One of the plaintiffs did, in his direct testimony, testify that the Tidal Oil Company had permitted salt water to escape from some of its wells operated on the 80 acres above mentioned and to flow into Cabin creek, which he claimed runs across the corner of this tract, but upon cross-examination he admitted that such was not the case. There is some claim that salt water from Cabin creek flowed into Delaware creek, which ran into or along the line of the pasture at a point on the north line about one-half mile east of the lease of the Tidal Oil Company, but if this be true, in the absence of any evidence tending to show that the Tidal Oil Company was in any way responsible for the pollution of Cabin creek or Delaware creek, there is no evidence to support the verdict and judgment as against the Tidal Oil Company.

It was, therefore, error to refuse to direct a verdict for the Tidal Oil Company.

Defendants contend that the court erred in submitting the cause to the jury because no joint and concurring acts or causes of injury were established as to the stock alleged to have been injured or killed. They contend that because there was no evidence to connect all of the defendants with the pollution of any one stream or source of water supply within the pasture, there can be no joint recovery.

There was evidence tending to show pollution of two streams besides certain salt water ponds on certain parts of the land. Two separate streams ran across the land from south to north, Cabin creek and Nester creek. A number of small branches drain into each. Nester creek runs nearly through the eastern part of the pasture, and Cabin creek heads in the southwestern part, runs northwest about half a mile and out on the west line, then into the pasture again for a short distance and out again on the west line, where it flows west for about half a mile and turns north and runs about one mile across lands claimed to be in the pasture. There is no drainage from either of these streams into the other. Cabin creek drains into Delaware creek outside and north of the pasture. Nester creek drains into Delaware creek about one mile north and east of the pasture.

There is no evidence to connect defendant Keewanee Oil & Gas Company with the pollution of Cabin creek, and none as to Delaware creek except from the drainage of Nester creek, and this was not within the pasture. The same is true as to F. A. Gillespie & Sons. There was evidence to show that plaintiffs' cattle were seen drinking water from both Cabin creek and Nester creek.

Defendants cite Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906, wherein the plaintiff was denied recovery where without concert of action certain oil companies and another oil company, the latter the lessee of the plaintiff, damaged the latter by allowing salt water, oil, etc., to escape from their oil wells into a stream running through plaintiff's land. The reason given was that plaintiff's own tenant contributed to the damage and there was no evidence to enable the court to separate the amount of damage inflicted by the group sued from the amount of damage resulting from the acts of plaintiff's tenant. Under the pleadings and evidence in the instant case, a different situation exists. There was no allegation that plaintiffs' lessee contributed to the pollution. In the absence of such allegations the court rejected evidence concerning plaintiffs' lessee. In the Walters Case, supra, it was also held:

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the en-

tire result, even though his act or neglect alone might not have caused it."

The same rule is announced in Northrup v. Eakes, 72 Okla. 66, 178 P. 266.

In 38 Cyc. 488, it is said:

"It has been said that 'to make tort-feasors liable jointly, there must be some sort of community· in the wrongdoing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together or in concert if their concurring negligence occasions the injury'."

The question then arises: What is the injury? Plaintiffs are not suing for damage to the freehold, nor was the case, as presented to the jury, one for damage to the pasture itself. The injury for which damage is claimed was to plaintiffs' live stock. While the defendants were acting independent of each other, if their acts combined to produce the alleged injury to plaintiffs' live stock, as stated in Northrup v. Eakes, supra, each so acting is responsible for the entire result even though the act of any one defendant might not have caused it. The contention of defendants as to this point cannot be upheld.

Plaintiffs allege in their petition, in substance, that during the years 1926-27, they had been in peaceable, quiet, and undisturbed possession and use of the land within the pasture with the consent of the owner. They alleged the pasture contained some 3,000 acres and described the lands that they could claim the right to pasture. This the defendants denied. At the trial defendants offered to prove that Grimes and Gillespie and F. A. Gillespie own 1,050 acres of the land included within the pasture, particularly describing the tracts. They also offered to prove that they had never given plaintiffs possession thereof, nor consented to their pasturing their cattle thereon. There was direct conflict in the evidence as to whether or not the pasture was entirely under fence. The court refused to permit defendants to show ownership of any of the lands, and that they and· not plaintiffs had possession of the lands they claimed to own and they had not given plaintiffs their consent to pasture same. Defendants· also offered to prove that no election had been held in Osage county providing for "free range." In other words, they offered to prove that the lands involved were not enclosed and that the provision of what is known as the herd laws of the state applied to the lands involved. If this were true and the defendants named did own 1,000 acres or more of the land within the so-called pasture, the plaintiffs' stock while grazing thereon would be trespassing upon defendants' land and subject ·to the herd laws. It was upon a part of these lands that plaintiffs testified some of their stock obtained and drank salt water, particularly a part of the northeast quarter of section 8, part of the southeast quarter, and all of the northwest quarter of section 6. If part of the injury to plaintiffs' stock was caused by their drinking salt ·water while upon the lands belonging to defendants, which plaintiffs had not obtained permission to pasture, it is difficult to understand how these defendants could be held liable for this part of the injury.

Plaintiffs cite Midland Oil Co. v. Ball, 115 Okla. 229, 242 P. 161, upholding their contention that quiet use and possession is sufficient to support an action of this character. A different situation was there presented. What this court held in that case was that where one is in the undisturbed and peaceful possession, the presumption is that the possession is rightful. There no showing was attempted to be made that the defendant owned the fee to the land upon which it was operating, or that others than plaintiff owned the fee of other lands, and that plaintiff had not obtained their consent to pasture the land. In the absence of such · showing the court correctly held that the presumption obtained that plaintiff's possession was rightful. Here the question of plaintiffs' possession was in issue as well as their right to possession, and the evidence offered was proper to rebut the presumption of right arising from possession, if possession was shown. In other words, conceding that plaintiff was in possession by reason of having enclosed defendants' lands with his own, or with that owned by him, and some other land leased from others, defendants were entitled to show that they owned the fee to the land in order to rebut the presumption of right to possession in plaintiff. They were also entitled to prove, if they could, that they had never given plaintiffs permission to pasture their lands.

Plaintiffs base their claim to some extent upon alleged violation by defendants of section 6526, and section 7969, C. O. S. 1921.

There is no evidence that any of the defendants deposited oil in any of the streams.

Section 6526, supra, has no application. Owen-Osage Oil & Gas Co. v. Long, 104 Okla. 242, 231 P. 296.

Section 7969, supra, provides:

"No inflammable product from any oil or gas well shall be permitted to run into

any tank, pool or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

If taken literally, this section would prohibit the owner of land from permitting any inflammable product from any oil or gas well to run into any tank or pool used for watering stock, although located upon his own land. Likewise it would prohibit the owner of land from allowing salt water to flow over the surface of his own land although confined exclusively thereto. Obviously this is not the intent of this section. The intent and purpose of the act is to prevent persons in the operation of oil and gas wells to deposit oil, etc., in ponds, tanks, etc., or in streams used by others for watering stock, and also to prevent such operators from allowing salt water to escape from their wells and flow over the surface of the land of others. To hold that operators could not flow salt water over the surface of land owned by them or leased by them for that purpose, or to deposit same in pools or tanks on their own land, would in many cases render impossible development for oil and gas in fields where salt water is produced. It would result in depriving the owner of land of the right to use it to his own advantage where such use would in no way harm or injure others. It is only permitting oil or other inflammable products to escape into pools or tanks used for watering stock and located upon the lands of others, or to flow into streams upon the premises of others, that the law was intended to prohibit. So with salt water. Subject to the rules of law with reference to due care, etc., the owner of land ought not to be prohibited from the full use and benefit thereof so long as he does not by such use injure or damage other persons.

Unquestionably plaintiffs were entitled to use and pasture a large part of the land involved, for part of the land was owned by one of the plaintiffs and part was owned by his mother. None of the defendants had the right to pollute the streams flowing across this land, but the right of defendants to construct salt water ponds upon their own land, if they owned any, cannot be disputed.

Defendants also contend that there was not sufficient evidence as to the amount of damage to permit the submission of the case to the jury. Particularly do they so contend as to the 331 head of steers. There is some evidence tending to show the market value of the steers just before they were placed upon the pasture and after their alleged injury. There was considerable difference shown in their value, but there was but little evidence tending to show that this was due wholly to their having drunk salt water, and that the change in value was not due to some extent to the change in the general market value of cattle. However, we think there was sufficient evidence to go to the jury.

Other questions are raised, but as the case must be reversed for a new trial, we will not discuss them here.

For the errors pointed out, the judgment is reversed, with directions to enter judgment for defendant Tidal Oil Company, and to grant a new trial as to all the other defendants.

LESTER, C. J., and HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., concurs in result. CLARK, V. C. J., and SWINDALL, J., absent.

Note: See under (2) 26 R. C. L. 763 et seq.; R. C. L. Perm. Supp. p. 5802: R. C. L. Pocket Part, title Torts, § 13. (3) annotation in 9 A. L. R. 951; 27 R. C. L. 1226; R. C. L. Perm. Supp. p. 6057, 6058.