## INDIAN TERRITORY ILLUMINATING OIL CO. v. ADAMS.

No. 24665.   Oct. 20, 1936.

Rehearing Denied Feb. 2, 1937.

W. P. McGinnis, Fred M. Carter, and Hamilton & Howard, for plaintiff in error.

Ralph A. Barney, for defendant in error.

WELCH, J. The parties appear here in reverse order to their appearance in the trial court, and will be referred to herein as plaintiff and defendant, as they appeared in the court below.

Plaintiff sued the defendant and others for alleged damages caused by his cattle drinking salt water alleged to have been deposited in a running stream by the defendant. The suit was dismissed as to the other defendants. The cattle were alleged to have been damaged thereby during the grazing season of 1931. Plaintiff alleged damages of $11,910, and upon trial to a jury, same resulted in a verdict and

judgment in favor of plaintiff for $4,500, and the defendant appeals.

The defendant urges here that the verdict of the jury and judgment of the court is contrary to law and denied defendant a fair and impartial trial. It complains of certain instructions given by the court, to which exceptions were taken, and of the action of the court in refusing to give certain requested instructions. It also urges that there is no competent and material evidence in the record to sustain the verdict of the jury and judgment of the court, and it likewise complains that the trial court erred in refusing to grant a new trial upon the defendant's alleged newly discovered evidence.

The defendant's argument with reference to the alleged erroneous instructions given by the court is directed primarily at instructions 4 and 7. Instruction No. 4 instructs the jury that the law of the state prohibits oil and gas mining operators from permitting salt water and other deleterious substances to escape from their oil mining operations and to flow over the surface of the land into fresh water streams which are used as a water supply for stock. It instructed that if the jury found from the evidence that the defendant permitted salt water and other deleterious substances to so escape and flow over the surface of the land into streams which are the fresh water supply for cattle, and if plaintiff's cattle drank therefrom and sustained injury as a proximate result thereof, then a verdict should be returned in favor of plaintiff to reimburse him for the injuries sustained.

The evidence discloses that during the period involved, plaintiff was grazing several hundred head of his cattle in his pasture, consisting of several hundred acres of land. There is no dispute here that the evidence shows that the defendant permitted salt water to escape from its lease operations into a stream which traversed this pasture several miles. The defendant owned oil and gas leases on the land through which the upper part of the stream ran. It also owned surface leases on the land through which the upper part of the stream ran for a mile or more. The evidence was conflicting as to whether plaintiff's cattle were injured by drinking the salt water from the stream at points where the defendant owned the surface lease, or whether the injury occurred from drinking the salt water at points on the stream in plaintiff's pasture below the land upon which the defendant owned surface leases. The defendant makes the point that instruction No. 4 was erroneous in that it informed the jury that even though they found that the cattle drank from the poisoned stream at points located upon land covered by defendant's surface lease, still the defendant would be liable therefor.

The requested instructions which were refused by the court appear to have been designed to inform the jury that the defendant owned certain surface leases, and that the defendant would not be liable for the cattle drinking from the stream at points covered by the surface leases.

We have carefully examined the entire instructions, and it is our conclusion that the jury was fully instructed upon the point made by the defendant. We quote instruction No. 5, as follows:

"You are further instructed that under the law of this state, an oil and gas lessee has the right to produce salt water on its leased premises, and to permit salt water to flow over the surface of the ground of its leased premises, provided the oil lessee, in addition to owning the oil lease, owns the surface right or has a surface lease thereon.

"And in this connection, you are further instructed that if you find from the evidence in this case that the plaintiff permitted his cattle to graze upon the land on which the defendant owned the surface lease, and if you further find and believe from the proof before you that plaintiff's cattle drank salt water out of any portion of Cedar creek upon which the defendant owned the surface lease and were injured as a proximate result thereof, then and under such circumstances you are told that plaintiff could not recover for any injury to his cattle which was occasioned as a proximate result of drinking salt water or other poisonous substances upon the surface leased premises of the defendant herein.

"You are instructed that it was not necessarily the duty of the plaintiff to fence out of his pasture that portion of the land upon which the defendant herein owned a surface lease, but in this connection you are told that if he failed to do so, and his cattle were injured as a result of his failure so to do, then and under such circumstances he could not recover therefor."

Instructions Nos. 6, 8, and 9 also sufficiently inform the jury that the defendant will not be liable if the jury finds that the cattle were injured by drinking the salt water from the land upon which the defendant owned the surface lease. The defendant, although apparently recognizing that instructions 5, 6, 8, and 9 instructed the jury in conformity with its defense in this connection, complains that such instruc-

tions are inconsistent with instruction No. 4 and other paragraphs of the instructions. It points to a number of decisions of this court wherein it has been held that it is the duty of the trial court to give consistent and harmonious instructions, among which are Pittsburg County Railway Co. v. Hasty, 106 Okla. 65, 233 P. 218; Welge v. Thompson, 103 Okla. 114, 229 P. 271, and Petroleum Iron Works Co. v. Bullington, 61 Okla. 311, 161 P. 538, and others.

In the Hasty Case, supra, it is held in the fourth paragraph of the syllabus:

"The instructions must always be considered as a whole, but they must be consistent and harmonious, and where two instructions are given containing inconsistent or conflicting propositions, tending to confuse the jury, the cause will be reversed for the reason that the court is unable to determine which instruction the jury followed and which they ignored."

We are aware that it is the established law of this state that the instructions of the court must be harmonious so as not to confuse the jury. Our consideration of the entire instructions here as a whole, however, does not result in a conclusion that the various paragraphs thereof are inconsistent or confusing to the jury. Instruction No. 4 informs the jury of the law generally, while the other instructions we have mentioned specifically and in unmistakable terms instruct the jury, and reiterate, that it cannot hold defendant liable for any injuries by the cattle drinking salt water off of the premises covered by the defendant's surface lease. It is our view that it would be highly presumptive to assume that the members of the jury were unable to understand the clear and concise language contained in the instructions given immediately following instruction No. 4, and to recognize the same as an exception to the general rule of law announced in No. 4. We find no error in this regard.

The defendant further complains that the trial court left open for the consideration of the jury the question of whether or not the defendant owned a subsisting surface lease on certain of the land during the grazing season of 1931. It contends that the evidence shows conclusively that the defendant did own such lease, and that under the evidence it was the duty of the court to so instruct the jury as a matter of law. It offered certain instructions to that effect, which were refused. The facts necessary for a consideration of the point are that the defendant owned the surface lease on one 40-acre tract through which one tributary of the stream ran, which surface lease existence was in no wise disputed; that it also owned the surface lease on another 160-acre tract, which was within about a quarter of a mile of the stream, the existence of which lease was in no way disputed. The defendant likewise owns the oil and gas lease on these two tracts, and was producing oil therefrom and using same for storage. There were salt water ponds on each of these. The evidence further shows that Adams, the plaintiff, was the owner in fee of most of the land traversed by the stream in controversy. Prior to his purchase thereof the defendant had obtained from the owner a surface and water rights lease covering several hundred acres through which the upper portion of the stream ran. This lease was from year to year, with the provision that it might be canceled by either party upon 30 days' written notice, without which notice the same would continue from year to year upon the defendant depositing the yearly rental therefor in a certain bank. There is no evidence that any notice of termination of the lease was ever given. The evidence is undisputed that the defendant deposited annual rentals in the named bank. The plaintiff in his testimony, in answer to questions propounded by his counsel, testified that he purchased the land in 1928, and that the defendant oil company had not paid him any rentals since that date.

It is probable that it might have been the duty of the trial court to give the requested instruction in this connection were it not for the fact that the record before us fails to indicate that the question of whether or not the defendant owned a surface and water right lease on this particular land was seriously controverted. The record, however, indicates most strongly that the cause was tried upon the theory that the defendant did own such a lease, and that it was in full force. The court gave the following instruction:

"Evidence has been offered in this case with reference to the plaintiff herein being the owner of the land upon which the defendant owned a surface lease. In this connection, you are told that since the plaintiff became the owner of said land after the time the defendant procured a surface lease thereon, that the defendant would have a prior right to the use thereof, and the plaintiff having procured a deed for said land after the execution of the surface lease to the defendant, the defendant would have the prior right to the use thereof during the remaining period of their lease."

The defendant complains of the above instruction in that it fails to specifically advise the jury "the remaining period of the lease." An examination of the instructions as a whole indicates that the court and the parties to the action were proceeding upon the assumption that such lease was in force.

Instruction No. 5 uses the term "on which the defendant owned the surface lease," and substantially the same term is used in the same instruction in three other places therein. Approximately the same term is used at three places in instructions Nos. 6 and 9. It is to be observed that instruction No. 8 itself, which we have herein quoted, appears to assume that such surface lease existed, and that its chief purpose was to instruct the jury that the change of ownership did not affect the validity thereof. It seems readily apparent that had the plaintiff considered the question of whether or not such surface lease had expired to be a vital issue to his cause, he would have objected to this instruction and offered an instruction accordingly. There is no affirmative instruction in the charge to the jury to the effect that it might determine whether or not the surface lease had expired, and the record contains no substantial evidence upon which the jury might reasonably have concluded that the same had expired. We are unable to say from the record before us that the jury was likely led to the conclusion that this particular surface lease had expired, and that therefore the particular land covered thereby was not included within the meaning of the court's instruction wherein the leased premises of the defendant company are so often referred to.

With reference to the complaint regarding instruction No. 7, we observe that such instruction deals with the measure of damages, and the objection goes to the phrase therein, "any cattle which died as a proximate result of drinking poisoned and polluted waters from defendant's oil mining operations." It urges that the use of the term "any cattle" included some eight head of cattle which died subsequent to the bringing of suit. Under the evidence it is our conclusion that such inclusion would be justified.

The defendant further complains that there is no evidence from which the jury might ascertain how much damage was caused to the cattle by drinking salt water off of the defendant's leased premises, and how much damage was caused by drinking the salt water off of the premises upon which the defendant did not have a surface lease. It cites in support of this contention the case of Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906. It is sufficient to say in this connection that there is competent evidence showing that the defendant permitted salt water to escape from its leased premises into the stream which was generally and habitually used by plaintiff's cattle as a watering place upon the land of the plaintiff which was not under lease to the defendant, and the question of the fact of injury appears to be supported by the evidence. It is true that there is some evidence tending to show that these same cattle may have drunk some of the poisoned water on the land under lease by the defendant. Whether they did so or not was a controverted question of fact to be determined by the jury, and the case of Devonian Oil Corporation v. Hurt, 169 Okla. 114, 36 P. (2d) 24, is more nearly applicable. Therein the court said:

"It is further pointed out by defendant that there was an open salt water well on the premises of plaintiff to which his stock had access, and the defendant contends that the jury could not tell whether the stock was damaged from the salt water well or from the polluted stream. It was a disputed issue whether or not it was possible for the stock to drink from the well; some of the witnesses testifying that there was only a seepage of salt water from the well which soaked into the soil. This is purely a question of fact. Under the instructions of the court, it was incumbent upon the jury to determine from what source the stock drank the salt water that resulted in injury, and, having made such determination, based on competent evidence, its finding in this regard will not be disturbed."

With reference to defendant's contention that a new trial should have been granted upon newly discovered evidence, we note that the newly discovered evidence relied upon concerns the question of whether or not the Crow surface lease was in full force and effect at the time of the alleged damage. It also tends to refute plaintiff's testimony to the effect that the defendant had not paid him the annual rentals thereon. Inasmuch as we have already concluded that the record fails to show that such question was a vital issue, and that the cause was tried to the jury instructed upon the apparent assumption that such lease, along with defendant's other surface leases, was in full force and effect, we find no error in the action of the trial court in refusing to grant a new trial.

Failing to find prejudicial error, the cause is affirmed.

McNEILL, C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.