## DELANEY et al. v. MORRIS.

No. 30829. Feb. 8, 1944.

*145 P. 2d 936.*

Vernon Roberts, of Ada, and A. E. Montgomery, of Tulsa, for plaintiffs in error.

Stephenson & Stephenson, of Okemah, and John Morrison, of Oklahoma City, for defendant in error.

BAYLESS, J. C. B. Morris sued W. A. Delaney, Jr., Ark Royalty Company, a corporation, et al., and other parties not involved in this appeal, in the district court of Okfuskee county of Oklahoma, to recover damages for the permanent injury to his land as the result of the pollution of streams and watercourses crossing his land; and from a judgment in his favor, based on the verdict of a jury, Delaney and Ark appeal. They filed separate petitions in error. They have filed a joint brief, the first two propositions presented affecting Delaney only and the other three affecting both.

We consider first the two propositions affecting Delaney alone. In doing this it is necessary to recite certain facts in the case which we take to be undisputed. First: The land involved is located in Okfuskee county, while Delaney is admittedly a citizen and resi-

dent of Pontotoc county and was served with summons in that county. Second: The pollutive substances were shown to have been cast upon the land of Morris, by evidence sufficient to sustain the verdict of the jury, from two separate and independent sources. Morris owned 100 acres of land consisting of one 80-acre tract described as the N.½ of S.W.¼, and a 20-acre tract described as the E.½ of S.W.¼ S.W.¼, all in sec. 8. Ark operated a lease described as the W.½ of S.W. or S.W. of sec. 8, and Delaney operated a lease lying due west of the Ark lease, his N.E. corner being contiguous to the S.W. corner of the Morris 80. It stands proven by sufficient evidence to support the verdict that Ark and Delaney cast pollution into ravines which flowed across Morris's land. This evidence shows that Ark cast its pollution into a ravine at a point on the west line of the 20-acre tract, and this ravine flowed in a northwesterly direction until it neared the northwest corner of Morris's land, at which point the ravine turned abruptly to the northeast and left Morris's land near the center of the north line. It stands proven by the same sufficient evidence that no pollution from Delaney's land got into this ravine until it made the abrupt northeast turn mentioned. It stands proven by the same sufficient evidence that the pollution from Delaney's land went into a ravine which extended almost due north from his lease to a point west of the point where the ravine on Morris's land made its northeast turn, at which point the ravine wherein Delaney cast his pollution made a right angle turn and extended on to the land of Morris and joined the ravine on Morris's land at the point where it made its northeast turn, this point being about 50 steps east of the west line of the Morris 80. It stands proven by the same sufficient evidence that no part of Ark's pollution was cast into the ravine wherein Delaney cast his pollution, and that the two ravines carrying these polluted streams had no relation to each other until they joined at the point above mentioned.

It is Delaney's first contention that there existed no joint cause of action against him and Ark that would support the jurisdiction of the district court of Okfuskee county over his person. He contends that the cause of action against him is several and is transitory, Pace v. Ott, 189 Okla. 230, 115 P. 2d 253; Fisher v. Fiske, 96 Okla. 36, 219 P. 683; and Delaney v. Atterbury, 189 Okla. 361, 116 P. 2d 968. Upon consideration of the pleadings and evidence in the record before us, in the light of the decisions cited as well as our decisions in Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906, and other cases cited by Delaney, we are of the opinion that the allegations contained in paragraphs Nos. 1, 2, and 3 of the second amended petition, and the evidence offered in support thereof, state and prove a joint cause of action against Delaney and Ark (it standing admitted that the district court of Okfuskee county had jurisdiction over Ark, one of the joint tort-feasors) for whatever damage was done to the Morris 80-acre tract from the point where the two ravines joined near the northwest corner of the Morris 80-acre tract and flowed northeasterly across it. Delaney rather clearly delineates and recognizes the existence of a joint cause of action against him and Ark on page 43 of his brief. This disposes of the first contention that Delaney made with respect to the lack of jurisdiction over his person.

However, it leads directly into the second contention made by Delaney, that the trial court erred in failing to give certain instructions requested by Delaney, and causes us to reach the conclusion that Delaney is correct in respect thereto, and that the judgment must be reversed insofar as it affects Delaney.

We observe that in addition to the joint cause of action stated, paragraphs Nos. 1, 2, and 3 of the second amended petition, the plaintiff thereafter stated in paragraph No. 4 of the second amended petition a joint cause of action against Ark and other defendants than Delaney, thus resulting in the plaintiff pleading,

and later proving, insofar as Ark is concerned, an entirely separate and distinct act of pollution than that for which Delaney would be responsible. In the fifth paragraph of the second amended petition, the plaintiff alleges "that as a direct and proximate result of said pollution the plaintiff's land, set out above, has been damaged and injured . . . " It thus appears that the plaintiff has pleaded two separate and distinct sources of pollution which later, according to plaintiff's evidence, commingled and affected the land at a certain point but which prior thereto had left obvious and ascertainable separate and distinct effects upon other portions of the land.

The rule is well established, and has been recognized and applied in this state since Northrup v. Eakes, 72 Okla. 66, 178 P. 266, and Walters v. Prairie Oil & Gas Co., supra, that where persons are guilty of separate and independent acts of negligence which combine to produce directly a single injury, the courts will not attempt to apportion the damage, especially where it is impracticable to do so, but will hold each joint tortfeasor liable for the entire result. In all of the authorities, emphasis is laid upon the single injury produced. 62 C. J. 1130, § 44 et seq; 45 C. J. 895, § 476; 38 Am. Jur. 946, § 257; and the many decisions cited in the footnotes found therein, including our own decisions.

The issue before us is whether the pleadings and evidence in this case present a situation wherein there is but a single injury which is not apportionable among the joint tort-feasors, or whether, as suggested by Delaney, presented (1) a single, separable injury by Ark; (2) a single and separable injury by Delaney; and (3) a joint injury by the two.

We are of the opinion from the pleadings and evidence that had Morris sued Ark alone, he could have recovered from Ark for the entire damage done to his property, under Walters v. Prairie Oil & Gas Co., supra, and other decisions, because the facts in the case show that the pollution which Ark cast upon Morris' land flowed the entire distance that any pollution flowed over Morris' land except the short distance west of where the ravines joined. On the other hand, we are of the opinion that had Morris sued Delaney alone, Morris would not have been permitted to show, or to have the jury take into account, the damage done to his land by the pollution cast thereon by Ark, south of that point where the two ravines joined. There is no rule of law that would have authorized Morris to recover against Delaney for the pollution cast onto Morris' land by Ark where it was so clearly distinct and separable from that of Delaney. We do not find that we have had such an issue as this for our consideration before that involves facts such as are before us. In the case of Tidal Oil Co. v. Pease, 153 Okla. 137, 5 P. 2d 389, two separate watercourses on the land were polluted from different sources, but the action was for the death of cattle which died as the result of drinking, possibly from both streams, and the court held this was a single injury impracticable of apportionment or separation of causes; but this court commented in that opinion that an entirely different issue would have been presented had the action been one for an injury to the land. We have that issue before us. The very obvious difference between earlier fact situations and issues and those in this case compels us to hold that Delaney is correct in asserting that the injury complained of is not single but is divisible.

Delaney sufficiently presented issues designed to protect himself against liability for injuries inflicted by Ark alone, and preserved his record thereon. These issues and the prejudicial effect of the trial court's ruling thereon manifest themselves in the difference between the instructions given to the jury wherein the jury was permitted to find a joint judgment against defendants and in the instructions requested but refused wherein the jury was advised that Delaney could not be held liable for the injuries inflicted by Ark.

We are of the opinion the trial court erred in ruling on the requested instruc-

tions, and that the judgment against Delaney must be reversed.

We come now to the three propositions urged by the defendants jointly and severally for the reversal· of judgment. Upon consideration of these, we think it is necessary to discuss only one. This relates to the alleged prejudicial error of the trial court in refusing to permit an expert witness offered by defendants to testify from his study alone the effect of salt water upon vegetable and plant life.

The defendants offered as a witness Doctor Robert M. Isham, who showed as his qualifications B.A., M.A., and Ph. D. degrees from American schools in the study of chemistry; nearly 30 years' experience as a chemist; specialized study of the effect of salt water upon livestock; a specialized study in regard to poisons and poisonous, materials in regard to people and animals; and that he kept abreast of the times and studies in these matters and had read all writings available concerning the effect of salt and salt water upon vegetable and plant life, but had not himself conducted any experiments or observations of the same. Thereupon, the trial court refused to permit him to give his opinion as to whether the salt in the water analyzed by him, taken from the ravines on the property involved, was harmful to vegetable and plant life.

This court has been rather liberal in upholding the ruling of the trial courts in passing upon the qualifications and competency of both expert and lay witnesses to give their opinions concerning the injurious effect to land, plant life, and animals in this type of case. In doing this this court has followed what seems to be the general modern trend, and in Small v. Comer, 171 Okla. 418, 43 P. 2d 716, discussed this matter at some length and quoted from Bell v. Tackett, 134 Okla. 164, 272 P. 461, as follows:

"Whether or not the qualifications of a witness with respect to knowledge or special experience are sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final, and will not be disturbed by an appellate court, except in extreme cases, where it is manifest that the trial court has fallen into extreme error, or has abused its discretion, and that prejudice to the complaining party has resulted, even though the appellate court might have decided differently if the question had been presented to it in the first instance."

It thus becomes our duty to determine first whether a so-called expert witness is qualified by virtue of study alone or must combine experimental practice and observation with his study; and, second, whether the court's ruling in this particular instance was so clearly and extremely erroneous and prejudicial as to require reversal.

In Wigmore on evidence (3d Ed.) vol. II, § 555 et seq., and vol. III, § 687, this subject is dealt with at great length with respect to both medical and chemical experts. It seems to be held throughout this country that a person is qualified to express an opinion with respect to the subject whereon he offers himself as a specially trained or qualified witness when his training and qualifications are limited to study alone. In Illinois Steel Co .v. Fuller. 216 Ind. 180, 23 N.E. 2d 259, the court quotes from its earlier decision in Isenhour v. State, 157 Ind. 517. 62 N.E. 40, 87 Am. St. Rep. 228, as follows:

"Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined, and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstrations. The general rule in such cases, in this state, at least, seems to be that, where a witness exhibits such a degree of knowledge, gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify, leaving to the trial court, in the exercise of a sound discretion, the right to say when such knowledge is shown, and to the jury the right to say what the opinion is

worth; and, as in all other cases of discretion, this court will review the action of the trial court only when that discretion clearly appears to have been abused."

We conclude that Doctor Isham was qualified to express his opinion, from his study on the subject, of the injurious effect. of this water, which he had analyzed, upon vegetable and plant life. See Am. Dig. (West), Evidence, Key No. 535 et seq., for our decisions on the competency and qualifications of such witnesses.

We now consider whether the refusal to permit this witness to express an opinion was prejudicial. The admissibility and effect of the testimony of such a scientific expert has been recognized by this court in Shell Petroleum Co. v. Worley, 185 Okla. 265, 91 P. 2d 679, Magnolia Pet. Co. v. Norton, 189 Okla. 252, 116 P. 2d 893, and other cases. We observe in the record before us that the plaintiff introduced certain lay witnesses who were permitted to testify concerning the taste of the water in these ravines, and to testify concerning the appearance of the vegetable and plant life on the portions of the farm claimed to be injured, from all of which the jury was justified in inferring that these witnesses implied that the salt water caused the vegetable and plant life to die, and caused the bare land thus described to lose its value.

It seems to us to be particularly prejudicial to the defendants to refuse to permit them to introduce evidence to contradict or counteract the plaintiff's evidence of the type mentioned upon what Wigmore calls a "narrow and finical ruling" wherein an unjustified rejection is made of expert opinion based upon study not aided by experiment or observation. This was the only witness the defendants offered, and they argue correctly that he was qualified and they were justified in relying upon the admissibility of his opinion. We are of the opinion that it was such a clear and prejudicial ruling as to justify a reversal of the judgment rendered against the defendants.

The judgment is reversed and the cause is remanded, with directions to take further proceedings not inconsistent with the views herein expressed.

CORN, C.J., and OSBORN, WELCH, HURST, and DAVISON, JJ., concur. GIBSON, V.C.J., concurs in conclusion. RILEY and ARNOLD, JJ., dissent.