HARPER–TURNER OIL COMPANY, a
corporation, Plaintiff in Error,

v.

Grace BRIDGE and H. A. Bridge, Defend-
ants in Error.

No. 37315.

Supreme Court of Oklahoma.

May 28, 1957.

Robinson, Shipp, Robertson & Barnes, by T. Murray Robinson, Wm. L. Robertson, Oklahoma City, for plaintiff in error.

Brown & Verity, by Geo. L. Verity, Oklahoma City, for T. E. Atkins and L. D. Morett d/b/a Atmar Drilling Co.

P. D. Erwin, Chandler, for Grace Bridge and H. A. Bridge.

WILLIAMS, Justice.

This action was brought by Grace Bridge and H. A. Bridge, hereinafter referred to as plaintiffs, against Harper-Turner Oil Company, a corporation, and Atmar Drilling Company, hereinafter referred to as defendants, to recover damages for alleged injury or destruction of a water well. On July 1, 1954, plaintiffs filed their petition herein alleging that the defendant, Harper-Turner, heretofore on another tract of land, drilled a dry hole which was within 200 feet of plaintiffs' home, without plaintiffs' consent; that plaintiffs had a water well 225 feet deep, cased and equipped with an electric pump; that Harper-Turner drilled to a depth of approximately 4,800 feet but set only a 90 foot string of surface casing; that the well was not properly plugged; that, although in the drilling of said well formations bearing gas, oil and salt water were encountered, such formations were not sealed off so as to prevent the same from escaping, percolating and seeping into the water sand formations of the water well of plaintiffs; that salt water, petroleum products and other deleterious substances percolated and sceped into the said water well of the plaintiffs and greatly injured and damaged the same, but that the permanent injury did not become

apparent until about August 1, 1952; that during the months of April, May and June, 1954, the defendant Atmar reworked this dry hole, but did not run any additional surface casing, and completed the well as a producing gas well; that during the re-working job, gas, mud, salt water, and other petroleum and deleterious substances broke into plaintiffs' water well and completed the destruction thereof.

Defendant Harper-Turner answered admitting its corporate existence; admitting that it drilled a well for oil and gas as alleged, commencing the same on or about November 11, 1951, and abandoning the same on or about May 10, 1952; alleging that it set sufficient surface pipe to protect plaintiffs and cemented with 100 sacks of cement; alleging that on abandonment it plugged the well with cement on top of the mud; that in drilling and plugging the well, it complied with all rules and regulations of the Corporation Commission; denying that it improperly drilled or plugged the well; denying that its operations contributed to any damages of plaintiffs, and alleging that the results of its operations were known to plaintiffs more than 2 years prior to the institution of this action, and that plaintiffs' action was therefore barred by the statute of limitations.

Defendant Atmar answered admitting that it reworked the well, but denying any unlawful, wrongful or negligent method of operation; alleging that at the time of the re-working job plaintiffs had already abandoned the water well as unfit for drinking or any household purposes, and that any damage done could not have been done by defendant Atmar; alleging that, without admitting liability, Atmar had rewired the water well pump motor, had paid plaintiffs' son to haul water, and had drilled another water well 225 feet deep for the plaintiffs, which plaintiffs had refused to allow Atmar to case and complete.

The case was tried to a jury which returned a verdict in favor of plaintiffs and against defendant Harper-Turner in the amount of $2,500 and in favor of the de-fendant, Atmar Drilling Company. Judgment was rendered upon the verdict as returned by the jury, and defendant Harper-Turner appeals therefrom, while plaintiffs appeal from the verdict and judgment in favor of defendant Atmar.

As its first proposition, defendant Harper-Turner contends that plaintiffs' cause of action is barred by the Statute of Limitations set forth in 12 O.S.1951 § 95, subd. 3. Such statute provides that an action for trespassing on real property can only be brought within two years after the cause of action shall have accrued. It is well settled that the cited statute is applicable to actions of this type. However, it is equally well settled that the two year period of limitations does not commence to run against a cause of action for permanent damage to real property until the damage is apparent and it becomes obvious that such damage is of a permanent character. Peppers Refining Co. v. Spivey, Okl., 285 P.2d 228; H. F. Wilcox Oil & Gas Co. v. Juedeman, 187 Okl. 382, 101 P.2d 1050; Magnolia Petroleum Co. v. Norvell, Okl., 240 P.2d 80. Furthermore, the burden is upon the defendant to prove that plaintiffs' action is barred by the Statute of Limitations. Peppers Refining Co. v. Spivey, supra; Shell Oil Co., Inc., v. Haunchild, 203 Okl. 456, 223 P.2d 333. Plaintiffs alleged in their petition that the permanent nature of the damage to their well had not become reasonably apparent to them until around the 1st of August, 1952. Plaintiffs' evidence reasonably tended to establish that they first noticed that the water well was not as good as it had been within some two or three months after Harper-Turner had ceased its drilling operations; that the taste of the water produced from said well became such that they were forced to cease to use it for drinking and cooking purposes; that in the spring of 1952 they used the water from the well to water the plants and grass around their home and that the water killed the plants and grass; that they pumped the water well extensively during the spring and summer of 1952, in an effort

to clear up the pollution therein; that the water well would improve temporarily, but then would become worse; that they continued pumping the well on through the summer and into the fall of 1952 in the hope that they could clear out the pollution therein and restore the source of good water that they had previously had in said well. Their efforts in this regard, however, were without success.

The trial court instructed the jury, in submitting the cause to it, that one of the defenses of Harper-Turner in the case was that plaintiffs' cause of action was barred by the statute of limitations and that in a case of this kind plaintiffs must commence their lawsuit within two years from the time it became apparent to them, or would be apparent to a reasonable person under the same circumstances, that the injury was permanent; that the petition in this case was filed on July 1, 1954, and that the damage to plaintiff, if any, must have occurred or become apparent that it was permanent within two years prior to that time, or subsequent to July 1, 1952, and that if they, the jury, should find and believe from the evidence, that the injury and damage, if any, to the plaintiffs, was the proximate result of any negligence of Harper-Turner but that the same was obviously permanent prior to July 1, 1952, then the verdict should be for such defendant.

■ We are of the opinion that the question of when it became apparent to plaintiffs or would have been apparent to a reasonable person under the same circumstances, that the injury and damage to their water well was permanent, was a question of fact which the trial court properly submitted to the jury under correct instructions and the jury resolved such question in plaintiffs' favor. Defendant's first proposition is therefore without merit.

■ At its second proposition, defendant Harper-Turner contends that no causal connection was established between any negligent act of defendant and the alleged injury suffered by the plaintiffs. In support of this proposition, defendant argues that the evidence of plaintiffs showed only that they had a good water well; that Harper-Turner drilled a nearby well for oil and gas production which was abandoned as a dry hole, and shortly thereafter water from plaintiffs' well was not suitable for any domestic, livestock or irrigation use; that some act of negligence must be shown before the jury can be instructed as to the applicable law of negligence; that under the evidence in this case the only act of the defendant Harper-Turner shown, is that it drilled a dry hole and then plugged it, and that the case is wholly devoid of any competent evidence to establish a causal connection. We do not agree.

The evidence established that plaintiffs' water well was between 175 and 250 feet deep and had for many years produced an abundant supply of good water, suitable and used for human and animal consumption, and household and irrigation purposes; that defendant Harper-Turner drilled an oil well located 233 feet from plaintiffs' water well; that such oil well was drilled at a point some 15 to 25 feet higher in elevation than plaintiffs' water well; that although such oil well was drilled to a depth of some 5,000 feet, it was only "cased" to a depth of 90 feet with surface casing; that the general oil field practice is to ascertain the depth of nearby water wells and to set surface casing below the depth of such wells; that shortly after the drilling of such oil well, the water produced from plaintiffs' water well began to show evidence of contamination; that the amount of such contamination increased thereafter; that an analysis of the water from plaintiffs' well made in October, 1952, revealed that such water contained 5,706 parts per million of total dissolved solids, mostly salt, with some calcium, magnesium and sulphate also present, and was not fit for either human consumption nor irrigation of plants; that further analysis of such water made in April, 1954, revealed that the amount of dissolved solids therein had increased by some one thousand parts per million of salt, calcium, magnesium and sulphate; that plaintiffs' water well had

been contaminated from some source; that no other oil or gas wells had been drilled in the vicinity of plaintiffs' water well; that in the general area of the state involved shallow water wells never have as high a salt content as that disclosed by the analysis of the water from plaintiffs' well but that such saline waters are found in deeper wells; that in most places there is an impervious layer, or several of them, underlying the shallower relatively salt free veins of water, but if such impervious layer is opened through deeper drilling or other means, the saline waters in deeper sands have a tendency to rise through such opening and often find their way into the shallower veins of fresh water near the surface; that plaintiffs' well could have become contaminated with salt water in just such manner; that defendant Atmar reworked the hole drilled by defendant Harper-Turner and ran or set 4,900 feet of 5½ inch production casing or pipe inside the 10¾ inch surface casing previously set by Harper-Turner; that Atmar pumped 25 or 30 barrels of drilling mud into the annular space between the surface casing and the production casing and that the mud so injected into the well drilled by Harper-Turner flowed over to plaintiffs' water well and up and out of the top of such water well. Plaintiffs also introduced evidence indicating salt water was present in the hole drilled by Harper-Turner, which evidence will be hereinafter discussed in more detail.

While the evidence is to a great extent circumstantial, we regard it as sufficient to require the submission of the case to the jury.

 As its third and last proposition, defendant contends that rebutting evidence is proper only to explain or repel evidence of the adverse party and that if the adverse party introduces no evidence, there is nothing to rebut and the admission of any rebuttal evidence is error. This proposition is directed at the testimony of one of plaintiffs' witnesses, given on rebuttal, that there was salt water in the pit of the well drilled by Harper-Turner right after the well was drilled and plugged. Plaintiffs had put on their evidence in chief and rested, apparently without introducing any evidence as to whether any salt water had been encountered by Harper-Turner in drilling the well it had plugged and abandoned. Defendants then demurred to the evidence, which was overruled. Defendant Atmar then introduced its evidence, but defendant Harper-Turner rested without introducing any evidence. Plaintiffs then introduced testimony in rebuttal, and it was in the course of such testimony that the evidence in question was admitted. Defendant Atmar then introduced evidence in sur-rebuttal and plaintiffs thereafter introduced additional rebuttal testimony, after which all parties rested, defendant Harper-Turner still not having introduced any testimony.

 It is apparent that the testimony in question was not rebutting evidence, at least so far as defendant Harper-Turner is concerned. It does not follow, however, that the admission of such evidence was reversible error. The evidence was relevant and competent and, in fact, dealt with one of the essential elements of plaintiffs' case. While it was properly a part of plaintiffs' case in chief and should have been offered as such, and while the trial court could have penalized plaintiffs for failure to offer the evidence at the proper time by refusing to admit it when offered as rebuttal testimony, such court is not required to so act, but is vested with a wide direction in such matters by virtue of 12 O.S.1951 § 577, the fourth subdivision of which provides that "the parties will then be confined to rebutting evidence unless the court, for good reasons in furtherance of justice, permits them to offer evidence in the original case." The purpose of a jury trial is to establish and determine the true facts in the case in order that justice may be done. We are therefore not prepared to hold that the admission of competent, relevant testimony which enables the true facts to become known is error.

We therefore find no merit in the appeal of defendant, Harper-Turner.

Plaintiffs, by cross-petition in error, have appealed from the verdict and judgment in favor of defendant Atmar Drilling Company. As their first proposition, plaintiffs assert that defendants were joint tort-feasors and were both liable for the full amount of damage sustained, and cities in support thereof, Prairie Oil & Gas Co. v. Laskey, 173 Okl. 48, 46 P.2d 484; Town of Sentinel v. Boggs, 177 Okl. 623, 61 P.2d 654; and Phillips Petroleum Co. v. Vandergriff, 190 Okl. 280, 122 P.2d 1020. These cases are merely illustrative of the well established rule in this jurisdiction that where persons are guilty of separate and independent acts of negligence which combine to produce directly a single injury, the courts will not attempt to apportion the damage, especially where it is impracticable to do so, but will hold each joint tort-feasor liable for the entire result. It is well settled, however, that there must be but a single injury, and that to make tort-feasors jointly liable therefor, there must be some sort of community in the wrongdoing, and the injury must be in some way due to their joint work, even though it is not necessary that they be acting together or in concert, if their concurring wrongful acts occasion the injury. Tidal Oil Co. v. Pease, 153 Okl. 137, 5 P.2d 389; Kanola Corporation v. Palmer, 167 Okl. 430, 30 P.2d 189; Delaney v. Morris, 193 Okl. 589, 145 P.2d 936. Furthermore, one cannot be held to be a joint tort-feasor unless there is some evidence to connect him with the cause of the injury complained of. Healdton Oil & Gas Co. v. Regnier, 170 Okl. 271, 39 P.2d 973.

In any event, the questions of the nature and extent of the damage sustained and the proximate cause thereof are questions of fact to be determined by the jury. In view of the evidence presented here to the effect that plaintiffs' water well was polluted with salt water and rendered worthless long prior to the time defendant Atmar engaged in any activities in the area, and the further fact that there was a complete absence of any evidence that defendant Atmar did anything that caused or permitted salt water to percolate into plaintiffs' water well or the amount of salt water percolating into plaintiffs' water well to increase, it cannot be said that the verdict exonerating defendant Atmar was against the clear weight of the evidence.

As their last proposition plaintiffs contend that the court erred in giving instructions number 10 and 12 and in refusing to give plaintiffs' requested instruction number 2. Plaintiffs' requested instruction number 2 is as follows:

"You are instructed that each of the defendants is liable for the full amount of damage sustained by the plaintiff as the concurring negligence of the defendants caused the injury, even though their operations of the well were taken independently and at separate times."

Such instruction obviously would not have been proper since it affirmatively instructs the jury that the concurring negligence of the defendants caused the injury and that each of the defendants is liable therefor instead of submitting such questions to the jury for determination as the court properly did in the instruction given.

Plaintiffs do not specify in what regard instructions number 10 and 12 given by the court were erroneous except to say that they were erroneous because the defendants were joint tort-feasors. The effect of the instructions given was to require the jury to determine whether the defendants were joint tort-feasors or not, and it is apparently plaintiffs' contention that the court should not have submitted such question to the jury but should have instructed the jury that defendants were joint tort-feasors as a matter of law. This is in effect a reiteration of plaintiffs' first proposition hereinabove disposed of and we see no need to prolong this opinion by further discussion thereof.

Judgment affirmed.