PURE OIL CO. v. CHISHOLM.

No. 25495. March 17, 1936.

Rehearing Denied Nov. 2, 1937.

Application for Leave to File Second Petition for Rehearing Denied Feb. 1, 1938.

Alvin Richards, for plaintiff in error.

S. R. Lewis, O. S. Booth, and Wm. Blake, for defendant in error.

PER CURIAM. This action was commenced in the district court of Tulsa county by Webster Chisholm, as plaintiff, against the Pure Oil Company, a corporation, as defendant, to recover damages to lands and growing crops. The parties will be referred to as they appeared in the trial court.

Plaintiff, in his petition, alleged that he was the owner of an 80-acre tract of land; that defendant was operating producing oil and gas wells thereon and on premises adjoining the same; that the defendant, during the years 1931 and 1932, was careless and negligent in the operation of said wells and permitted salt water, crude oil, and base sediment therefrom to flow over and upon plaintiff's lands, whereby some four acres thereof were destroyed and the remainder seriously damaged, and which also destroyed certain growing crops. Under his first cause of action, which was for damages to his land, plaintiff sought recovery of the sum of $12,000, and under his second cause of action, which was for damages to his crops, the sum of $150. The defendant by its answer, admitted its corporate existence and that it was operating producing oil and gas wells on the premises described in plaintiff's petition, and that the plaintiff was the owner of the 80-acres which he claimed, and then denied generally and specifically all of the other allegations in plaintiff's petition.

The cause was tried to a jury. The defendant's demurrer to the evidence of plaintiff was overruled and its motion for a directed verdict was denied. Plaintiff requested and was granted permission to amend his pleadings to conform to the proof. At the request of the defendant, the jury was permitted to view the premises concerning which the controversy arose. The jury returned a verdict in favor of the plaintiff and fixed his damages at the sum of $2,000. Motion for new trial was filed and overruled, and defendant appeals.

The evidence discloses that the defendant was operating three producing oil and gas wells on the lands belonging to the plaintiff (which defendant had under lease by mesne conveyances), and six wells on lands immediately adjoining those of the plaintiff; that during the years 1931 and 1932 defendant permitted salt water to escape and flow from both operating units over and across the lands belonging to the plaintiff; that the salt water discharged from the lease operated by defendant on the adjoining lands was approximately twice the volume of that produced and discharged from the wells located on the lands of the plaintiff; that there was no proof of any necessity of discharging any of this salt water on the lands of the plaintiff.

For reversal the defendant assigns nine grounds of error and presents them under three propositions. Defendant urges first, "the defendant, as an operator, is not liable to the owner of the leased premises for damages caused by oil, salt water, and refuse from the wells on the leased premises in the absence of proof of negligence, and no effort being made to separate the damages alleged to have been caused by operations on plaintiff's land and that on adjoining land, no recovery can be had." In support of the above contention, defendant relies principal-

ly upon Tidal Oil Company v. Pease, 153 Okla. 137, 5 P. (2d) 389; Marland Oil & Gas Co. v. Hubbard, 168 Okla. 518, 34 P. (2d) 278; and Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906.

A correct answer to this contention involves a further construction of section 11580, O. S. 1921, which provides:

"No inflammable product from which any oil or gas well shall be permitted to run into any tank, pool, or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells, or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

As said by Mr. Vice Chief Justice Osborn, speaking for this court in the recent case of Texas Company v. Mosshamer, 175 Okla. 202, 51 P. (2d) 757:

"* * * Since the adoption of the Revised Laws of 1910, this statute has been treated as a penal statute and also as a remedy for the benefit of all persons who may suffer injury by a violation of its terms. Since the law positively requires that all waste oil and refuse from tanks or wells shall be drained into proper receptacles and be immediately burned or transported from the premises, and in no case shall the same or salt water be permitted to flow over the land, it has been repeatedly held that a failure to perform the duty thus enjoined upon the operator of an oil well is negligence per se, and no other negligence need be pleaded or proved. Knupp Oil Corp. v. Lohman, 129 Okla. 288, 264 P. 824; Comanche Drilling Co. v. Shamrock Oil & Gas Co., 122 Okla. 253, 254 P. 20; Owen-Osage Oil & Gas Co. v. Long, 104 Okla. 242, 231 P. 296; Devonian Oil Corporation v. Hurt, 169 Okla. 114, 36 P. (2d) 24."

In Tidal Oil Co. v. Pease, supra, we held that the provisions of the statute were intended for the protection of property, and that the owner of property might impound the substances enumerated within the above statutes or overflow his own land therewith without violation of said statute so long as he confined such operations strictly to his own premises and thereby caused no injury or damage to others. In this connection Mr. Justice Riley, speaking for this court, said:

"If taken literally, this section would prohibit the owner of land from permitting any inflammable product from any oil or gas well to run into any tank or pool used for watering stock, although located upon his own land. Likewise, it would prohibit the owner of land from allowing salt water to flow over the surface of his own land although confined exclusively thereto. Obviously this is not the intent of this section. The intent and purpose of the act is to prevent persons in the operation of oil and gas wells to deposit oil, etc., in ponds, tanks, etc., or in streams used by others for watering stock, and also to prevent such operators from allowing salt water to escape from their wells and flow over the surface of the land of others. To hold that operators could not flow salt water over the surface of land owned by them or leased by them for that purpose, or to deposit same in pools or tanks on their own land, would in many cases render impossible development for oil and gas in fields where salt water is produced. It would result in depriving the owner of land of the right to use it to his own advantage where such use would in no way harm or injure others. It is only permitting oil or other inflammable products to escape into pools or tanks used for watering stock and located upon the lands of others, or to flow into streams upon the premises of others, that the law was intended to prohibit. So with salt water. Subject to the rules of law with reference to due care, etc., the owner of land ought not to be prohibited from the full use and benefit thereof so long as he does not by such use injure or damage other persons."

Again, in Marland Oil Co. v. Hubbard, supra, wherein Chief Justice Riley and Justices McNeill and Osborn dissented, we further held as follows:

"A producer of oil and gas under a valid oil and gas mining lease is not an insurer, under the provisions of section 11580, O. S. 1931, against a claim of the owner of the leased premises for damage caused by oil, salt water, and refuse from the wells on the leased premises running over and across that portion of the surface of the leased land reasonably necessary for the development of the land for oil and gas purposes."

This later case was a suit between lessor and lessee and involved damages alleged to have been caused by development of the leased premises by the lessee, and in the body of the opinion we said:

"Under the facts shown by the record in this case, the defendant was not an insurer, under the provisions of section 11580, supra, at least, as to that portion of the leased land that was reasonably necessary for the development of the leased land for oil and gas purposes."

And previously in the opinion there appears the following citation from the case of Pulaski Oil Co. v. Conner, 62 Okla. 211, 162 P. 464:

"* * * While an oil and gas lease carries within its implications, if not within its expression, such rights as to the surface as may be necessarily incident to performance of

the objects of the contract, yet it is well settled that the implications go no further, and that the holder of a mining or oil and gas lease must protect the surface of the ground in so far as such incident necessity does not exist. * * *"

In the case now at bar, it appears that the oil and gas wells on plaintiff's lands had been in operation for a number of years prior to 1931 and 1932; that the injuries of which plaintiff complained were caused by flowing salt water over the lands of the plaintiff during the years 1931 and 1932, and thus, at least inferentially, was not a necessary incident to the development and operation of the lease on plaintiff's land. It further appears that at least two-thirds of the salt water which the defendant flowed over the lands of the plaintiff came from the lease located on adjoining lands and which was operated by the defendant. Under these circumstances, defendant's operations are not shown to come within the rule announced in Marland Oil Co. v. Hubbard, supra. The defendant, being in control of both leases and in the operation thereof, was under obligation to the plaintiff to refrain from any damage to plaintiff's lands not necessarily incident to the operation of the wells located on said premises. The plaintiff having alleged and the defendant having conceded that the salt water in question came from wells both on plaintiff's lands and from wells on adjoining premises under the control and operation of the defendant, the burden thereby shifted to the defendant to show either that the entire damage complained of was a result of and necessarily incident to the operation of the lease upon the plaintiff's lands or else to distinguish the damage resulting from the operations of the lease on plaintiff's land from that occasioned by the waters coming from the adjoining lands, if it desired to do so, for the purpose of mitigating the resulting damages. Since the defendant offered no proof in this respect, it was sufficient for the plaintiff to establish the fact that his lands had been flowed with salt water by the defendant, and that damage had resulted to him therefrom, since in any other situation than those outlined in Tidal Oil Company v. Pease, and Marland Oil Company v. Hubbard, supra, a violation of the provisions of section 11580, supra, are held to constitute negligence per se. See Owen-Osage Oil & Gas Co. v. Long, 104 Okla. 242, 231 P. 296; Pulaski Oil Co. v. Edwards, 92 Okla. 56, 217 P. 876; Texas Company v. Mosshamer, 175 Okla. 202, 51 P. (2d) 757.

The doctrine announced in Walters v. Prairie Oil & Gas Company, supra, therefore, has no application under the facts presented in the record before us, for the reasons which we have heretofore pointed out in Oklaken Oil Company v. Garrett, 171 Okla. 111, 42 P. (2d) 114.

Defendant next urges that "under the pleadings, no action for permanent damages is alleged and the court erred in permitting testimony as to measure of damages for permanent injury to real estate."

Plaintiff, under his first cause of action, alleged the total destruction of four acres of his land and a progressive and continuing damage to the remainder thereof, and under his second cause of action, which was to recover for destruction of his growing crops, alleged "that said damages could have been prevented, stopped and abated by the exercise of due and proper care, diligence and consideration on the part of the said defendant." It will be noted that the allegation in plaintiff's petition is in the past tense, and does not refer to future or a temporary condition. At the close of the evidence, plaintiff was permitted to amend his pleading to conform to the proof. While we do not consider that this was necessary, since, in our opinion, the petition was sufficient to allege permanent injury to the real estate, nevertheless, the error, if any, was harmless. The evidence was ample to sustain the allegation of permanent injury to plaintiff's lands.

Defendant's final contention is, "The verdict of the jury is contrary to the law and evidence, is excessive and given under the influence of passion and prejudice, under erroneous and prejudicial testimony admitted by the court over objections of the defendant, and under prejudicial and erroneous instructions given by the court." Defendant fails to present this contention with any degree of assurance and the argument and portions of the testimony advanced and set out in the brief in support thereof are far from convincing. Defendant took no exceptions to the instructions given by the court as it was required to do by the provisions of section 360, O. S. 1931. Under these circumstances this court is not permitted to review any alleged errors therein. See Whitehead v. Cook, 100 Okla. 282, 229 P. 254; Bartlesville Interurban Railway Co. v. Quaid, 51 Okla. 166, 151 P. 891; Alva Roller Mills v. Simmons, 74 Okla. 314, 185 P. 76; Kinney v. Williams, 66 Okla. 167, 168 P. 196.

Defendant fails to point out any basis for the charge of passion or prejudice on the part of the jury in reaching the verdict, and fails to establish any basis for its contention

that the verdict and judgment is excessive. We have carefully read the entire record, and it appearing that the cause was fairly and impartially tried, and that the evidence is ample to support the verdict of the jury, under these circumstances, the verdict and judgment will not be disturbed. See Oklaken Oil Co. v. Garrett, 171 Okla. 111, 42 P. (2d) 114.

Judgment affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, WELCH, and PHELPS, JJ., absent.

Supplemental Opinion on Rehearing.

PER CURIAM. The rule stated in the case of Marland Oil Co. v. Hubbard, 168 Okla. 518, 34 P. (2d) 278, cited in the opinion, in so far as it is in conflict with the rule stated herein, and particularly as to the burden of proof as to the necessity of the use of leased land for disposal of waste products, is hereby overruled.

OSBORN, C. J., and RILEY, PHELPS, CORN, and DAVISON, JJ., concur. BAYLESS, V. C. J., and WELCH, GIBSON, and HURST, JJ., dissent.