RUDCO OIL & GAS CO. v. LOFLAND, Adm'r.

No. 31134.   March 2, 1943.
Rehearing Denied April 6, 1943.

*135 P. 2d 494.*

A. S. Wells, of Seminole, for plaintiff in error.

Anglin, Stevenson & Huser, of Holdenville, for defendant in error.

CORN, C. J. This is an action for wrongful death instituted by the administrator against intestate's former employer. The parties will be referred to herein as they appeared in the trial court. The plaintiff sought recovery on grounds of negligence, that the defendant failed to exercise reasonable care in furnishing the deceased a safe place to work and reasonably safe machinery and appliances with which to do the work and reasonably competent servants to assist him in the work.

The defendant was the owner and operator of certain leasehold estate for oil and gas purposes in Seminole county, Okla., and the deceased was employed as a pumper. There was installed on the lease a central power plant equipped with a 25-horsepower Superior engine. In order for the pumper to start the engine he had to roll the flywheel forward. The engine was equipped with what is called a wico, very similar to the magneto on the old style Ford automobile, and in order to start this engine it was necessary to roll the flywheel forward, which acted as a crank on the same principle as a crank of the Ford automobile before the self-starters were installed.

Howard Allen, deceased, was and had been for several years prior to June 2, 1941, a pumper of a producing oil and

gas lease owned and operated by Rudco Oil & Gas Company, defendant, on which date he sustained fatal injuries while attempting to start a 25-horse-power Superior gas engine.

A part of his duty was to keep the power going. With a proper gas supply and the engine in good repair it was seldom necessary to start the engine and to encounter the dangers thereof, because the engine ran continuously night and day. But, because of inadequate gas supply and defective ignition the engine stopped many times daily, necessitating repeated startings by the pumper, requiring him to climb upon the big wheel as many times, thereby increasing and multiplying the dangers incident to his usual employment.

The power was operated by natural gas from the wells on the lease, although there was available for use a commercial supply that could be and at times was purchased from a gas company. The gas from the wells on the lease was inadequate to maintain sufficient pressure or supply to keep the engine going, and consequently the engine would stop several times daily.

It was the duty of the deceased, according to the testimony of his foreman, to report all needed repairs such as this to the foreman, whereupon a "trouble shooter" would take care of it or the parts replaced by good ones by another employee whose duties were to look after just such matters.

Two or three days before the accident, the deceased complained on two different occasions to the foreman of his employer company about the wico or ignition on the engine and the gas pressure, and both times the foreman or superintendent promised to remedy the situation, and that he would supply him with another wico within a few days and for him to go ahead and he would have a man out there in a day or so with a wico. This, the deceased continued to do, but the repairs or new wico were not made or supplied within the time.

On the 2nd day of June, 1941, the engine on the lease stopped running.

Deceased attempted to start it and climbed upon the big wheel in the usual way, with one foot in the spoke, holding the rim with his hands and pulled down, when the engine back-fired spinning the wheel backward, throwing him upward and backward to the concrete floor, fatally injuring him, resulting in death on the 16th day of September.

Counsel for defendant present their assignments of error under two propositions, to wit:

(1) "The verdict is not sustained by the evidence."

(2) "The court erred in his instruction."

We agree with the defendant that the deceased assumed the ordinary risks incident to his employment or work. But in this case there is evidence that would justify a finding by the jury that a condition was created by the acts and omissions of the defendant which multiplied and increased the hazards and dangers of deceased's employment and work beyond the scope or sphere denominated ordinary risks. Had the deceased been injured as the result of the ordinary danger, if any, of the starting an efficient engine fueled with an adequate supply of gas, we would be confronted with a different situation. But such is not the case, for he was operating an engine which by reason of either the fuel supply or defective ignition, or both, was repeatedly stopping, necessitating as many startings. This was an abnormal condition. An engine in good working condition properly fueled would not stop, but would keep going, eliminating the necessity of climbing upon the big wheel many times daily to start same, confronting the dangers incident thereto, and especially the dangers and hazards created by a defective wico or ignition.

Men experienced in pumping oil field leases and familiar with machinery of this type testified that low gas pressure and loose and worn parts such as were in this wico would cause the engine to stop and back-fire when being started. This created an extraordinary risk and one that deceased did not assume.

Deceased complained about the gas supply and defective wico to H. B. Jones, the superintendent of the defendant oil company; and was instructed to continue with the work and do the best he could with it until it could be repaired with a new wico.

The defendant company therefore had knowledge of the conditions but failed and neglected to remedy them within time.

This court in the case of St. Louis & San Francisco Ry. Co. v. Stitt, 108 Okla. 42, 233 P. 1073, in syllabus 1, held:

"Generally the master's duty to the servant requires of the former reasonable care and skill in furnishing safe machinery and appliances and keeping such machinery and appliances in safe condition, including the duty of making inspection and tests at proper intervals, and that the master's responsibility for the safe condition of his instrumentalities attaches at the first moment when they are put into use and continues as long as they remain in use."

In syllabus 2 this court said:

"Such being the character of the master's responsibility, the existence of the duty of inspection is a necessary consequence of the fact that the master's obligations cannot be adequately discharged unless during the entire period of which that responsibility is predicated, he takes notice of whatever a reasonably prudent person would have ascertained under the particular circumstances which happen to be involved."

In syllabus 3 the court said:

"When the appliance or machinery furnished an employee is at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary to detect defects, arising necessarily from the ordinary use of such instruments."

Whether the appliance or machinery furnished is reasonably safe or not is a question of fact, to be determined by the jury.

An examination of the authorities on this subject reveals that the courts generally and almost without exception submit such questions to the jury.

In 39 C. J. 1134, par. 1326 (c), we find the following statement:

"Whether the appliances furnished are reasonably safe or not is a question of fact, to be determined by the jury."

Numerous authorities in support of the rule are cited. In 39 C. J. 1136, par. 1328 (e), it is stated:

"In an action for injuries to a servant resulting from defective or dangerous machinery, the question of the master's negligence is generally one for the jury."

In 39 C. J. 1138, par. 1130 (cc), it is stated:

"Evidence tending to show that a servant's injuries resulted from a defective or dangerous condition of a locomotive, or its equipment and appliances, is generally held to raise a question for the jury as to the master's negligence."

In the cases of Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 P. 9; Joy v. Pope, 175 Okla. 540, 53 P. 2d 683; McDuff v. McFarlin, 185 Okla. 569, 95 P. 2d 636, this court held such questions should be submitted to the jury.

In the case of Producers' Oil Co. v. Eaton, supra, in syllabus 2, this court said:

"Where the evidence reasonably tends to show that an employer is guilty of negligence in that he has not furnished his employee a reasonably safe appliance with which to work, it is for the jury to determine whether the employer has been guilty of such negligence."

In the case of Chicago, R. I. & P. Ry. Co. v. DeVore, 43 Okla. 534, 143 P. 864, this court held in syllabus 4 as follows:

"The engine on which plaintiff and his coemployee were working at the time of plaintiff's injury had a fireman's cab, separate from the engineer's cab. Each of said cabs was constructed to contain a water glass, the purpose of which was to be used by the engineer to keep informed as to the condition of the water in the boiler. On the day plaintiff was injured, the engine was sent out with only one water glass; there being

none in the fireman's cab. The engineer was not informed of the absence of said water glass until out on the road. The fireman, without the knowledge and without any orders from the engineer, secured a glass which was too short and attempted to put it in. Plaintiff was called to the fireman's cab by the fireman, and as he reached the point near the water glass, it exploded, destroying his eye. Held, that the fireman, in replacing the water glass, was performing services for his master and acting within the general scope of his employment. Held, further, that the question of negli-. gence of the master, as well as that of the plaintiff's coservant, was, under all the facts and circumstances, a question of fact for the jury."

Defendant contends that the court erred in giving instruction No. 13, reading as follows:

"In this connection you are instructed, however, that when the said Howard Allen, deceased, entered the employment of defendant to engage in the type of work which he was doing at the time of the accident, that he assumed the ordinary risks and hazards incident thereto; and any dangers which might arise in the ordinary course of his employment and duties, and which were not known to the defendant and could not be foreseen or ascertained by the defendant at the time. In other words, motor-power driven machinery carries with it risks and hazards which requires ordinary care, caution and skill in the handling of same."

The instruction given is a substantial statement of the law. However, the defendant in this case did not submit any requested instruction to the trial court on this proposition, nor in any way call the court's attention to any claimed deficiency in the instruction at the trial of the case, therefore defendant is precluded from urging reversal by reason of this instruction.

The evidence in this case clearly shows that the defendant breached its duty in failing and neglecting to provide plaintiff's deceased with reasonably safe machinery and materials, to do the work he was doing; that deceased duly complained of the defective machinery; defendant promised to remedy the

situation, and in reliance thereon the deceased continued to work; that he was injured and died as a result of defendant's negligence and did not assume the risks incident thereto.

Our attention is called to the supersedeas bond of the defendant, we therefore enter judgment in favor of defendant in error on said bond.

Judgment affirmed.

GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.