DENVER PRODUCING & REFINING CO. v. MEEKER et al.

No. 33040.   Jan. 20, 1948.

*188 P. 2d 858.*

Stanley B. Catlett, of Oklahoma City, for plaintiff in error.

Robinson, Shipp & Robinson, of Oklahoma City, for defendant in error.

LUTTRELL, J.   This action was brought by plaintiffs, Grover C. Meeker and Zoe Marie Meeker, against Denver Producing & Refining Company, for damages arising out of the operations by defendant under an oil and gas lease upon the land of plaintiffs.  From a verdict of the jury and judgment in favor of plaintiffs, in the sum of $1,045, defendant appeals.

Plaintiffs' petition alleged an unreasonable use of the surface by the building of unnecessary roads, and the driving of heavily loaded vehicles across the land, which was operated by plaintiffs as a dairy farm; injury to fences by the unnecessary cutting and improper repair thereof; loss of milk due to the cutting of the dams of defendant's slush ponds and permitting their contents to run into the ponds which supplied drinking water to the cattle of plaintiffs; injury arising from the improper use of the property for pipe lines, and the failure to bury pipe lines. Defendant, in its answer, denied the allegations of plaintiffs' petition, and specifically denied that it had negligently conducted its operations on the land.

Plaintiffs' evidence tended to sustain the allegations of their petition, and defendant's evidence was to the contrary.  Plaintiff Grover C. Meeker testified that he had good hog-tight fences surmounted by barbed wire entirely around his place, which fence was in excellent condition; that it was unnecessarily cut by defendant in three places, and that such cutting caused the fence to sag, rendering it impossible for him to keep sheep or hogs on the farm, and permitting his stock to escape; that he was using the land for dairy purposes, and had seeded it to grass adaptable for dairy cattle; that defendant made five or six roads across the place in connection with the drilling of four oil wells thereon; that several of such roads were unnecessary, and that in wet weather defendant's heavily loaded trucks would leave the roads and run across the grass land, cutting it badly and promoting the growth of weeds, and rendering it impossible for him to mow, or otherwise prevent their growth.  He testified that some 80 acres of land was badly injured in this manner, and that to restore it to its former condition would necessitate an expenditure of around $15 per acre.  Other witnesses testified that the damage to the fence would amount to some $400 or $500, and that at least 35 or 40 acres of the land of plaintiffs was damaged by the cutting of unnecessary roadways and the operation of heavily loaded trucks over the land during the wet weather.  The evidence of plaintiffs further tended to show that on several occasions employees of defendant cut the slush pond dikes and permitted water containing drilling mud and other refuse to drain into the ponds which provided drinking water for their stock, and that by reason thereof they lost milk in considerable quantities for over a year. One witness produced by plaintiffs tes-

tified that by reason of the conditions above set forth the land of plaintiffs was damaged permanently in the amount of approximately $5,000.

All of the evidence above set forth was controverted by the witnesses for defendant. Defendant complains that there is no testimony from any witness in the business of producing oil to show that its operations on the premises constituted an unreasonable use thereof.

We have heretofore held that in cases involving questions coming within the observation and experience of laymen, and upon which they were qualified to testify, they would be permitted to testify, and the weight and effect of their testimony be determined by the jury. Indian Territory Illuminating Oil Co. v. Carter, 177 Okla. 1, 57 P. 2d 864. We think the witnesses produced by plaintiffs showed themselves sufficiently familiar with the use of the surface of the land for oil operations in the vicinity of the farm of plaintiffs to testify as to an unnecessary use thereof for roads, and for the hauling of equipment to and from wells thereon.

The same rule is applicable to the damage to plaintiffs for the loss of milk occasioned, according to their evidence, by the cutting of the slush pond dams and the running of the contents of the slush ponds into the ponds used by cattle for drinking purposes. Plaintiff Grover C. Meeker testified that the drilling mud and other substances contained in the slush pond were injurious to livestock; that he knew its effect on cattle, and that after the refuse from the slush ponds was permitted to drain into the ponds used by the cattle his cows became sick and the quantity of milk which they had theretofore produced fell of considerably; that for a period of perhaps a year he lost almost 100 pounds of milk per day. He also testified as to the selling price of milk at that time.

Defendant complains that no veterinarian was produced to show that this loss of milk was due to the drinking of the polluted water; that no chemical analysis of the water was made to show that it contained injurious substances, and that, therefore, as to the loss of milk, the evidence adduced by plaintiffs was not sufficient, and that the rule announced in Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303, should be applied. Defendant did not object to the testimony of Grover C. Meeker on the ground that he was not qualified, but attempted to show that the milk production during the period mentioned did not decrease. Defendant likewise did not produce the testimony of any expert to show that the substances contained in the slush ponds were not detrimental to cattle, but relied upon the testimony of lay witnesses to establish that fact.

We think the conflicting evidence adduced by the parties was properly submitted to the jury by the trial court.

There is evidence in the record reasonably tending to support the verdict.

"In an action at law where a verdict has been returned and a judgment rendered upon such verdict, and the evidence is conflicting, and there is evidence reasonably tending to support the verdict, this court will not weigh the evidence to determine where the preponderance thereof lies, and will not substitute its judgment for that of the jury." Indian Territory Illuminating Oil Co. v. Carter, supra.

Defendant also contends that the trial court erred in refusing to permit the jury to inspect the premises. This is a matter of discretion with the trial court. Empire Pipe Line Co. v. Dowdy, 177 Okla. 386, 60 P. 2d 757. From the evidence it appears that changes had been made in the condition of the surface, in that some of the slush ponds had been leveled off and the area around the wells had been cleaned up, so that the injuries complained of would not have been as apparent as they would have been at the time the action was filed. The refusal of the trial court to send the jury out to view the prem-

ises did not, under the circumstances, constitute an abuse of discretion.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.

