**CITIES SERVICE OIL COMPANY, a corporation; Phillips Petroleum Company, a corporation; and Earl E. Ives, Plaintiffs in Error,**

v.

**Pauline R. MERRITT, Defendant in Error.**

**No. 37143.**

Supreme Court of Oklahoma.

July 8, 1958.

Rehearing Denied Dec. 2, 1958.

**680**

Johnson, Tomerlin, Cotter & High, Oklahoma City, for plaintiffs in error.

John G, Hervey, Ralph J. May, Oklahoma City, for defendant in error.

JOHNSON, Justice.

This action was brought by Pauline R. Merritt, plaintiff, against defendants, Cities Service Oil Company, a corporation; Earl E. Ives; Phillips Petroleum Company, a corporation; and Mercury Oil Refining Co., wherein she sought actual and punitive damages as a result of defendants alleged salt water pollution of subterranean water-producing formations underlying her land, which rendered the water in her water wells permanently unpotable.

Demurrer was sustained as to Mercury Co., and it is not involved in this appeal.

Upon trial to a jury, a verdict and judgment based thereon was rendered in favor of plaintiff against all of the defendants, Cities Service Oil Company, Earl E. Ives and Phillips Petroleum Company, for actual damages in the sum of $30,448.03; and punitive damages in the sum of $4,500 and $500 were assessed against Cities Service and Phillips Petroleum Co., respectively.

Defendants' motion for a new trial was overruled, resulting in this appeal.

Defendants interpose 86 separate specifications of error which they present and argue under six propositions, to-wit:

"I. The court erred in refusing to permit the jury to view the premises.

"II. Plaintiff failed to sustain the burden of separating the damages resulting from permissive and non-permissive pollution, which precludes recovery against the defendant, Phillips Petroleum Company.

"III. The defendants, Cities Service Oil Company and Earl E. Ives, are not liable to the plaintiff for salt water damage occurring on the oil and gas lease of the defendant, Cities Service Oil Company, covering plaintiff's land, unless it was caused by negligence in the operations, and such principle is not abrogated by the Oklahoma statute relative to nuisances.

"IV. The court erred in failing to submit to the jury the issue as to the character of damage involved, and failed to properly instruct the jury on the measure of damages.

"V. The evidence is too conjectural to sustain the grossly excessive award of actual damages.

"VI. The verdict awarding punitive damages is not supported by the evidence."

█ We will review a verdict founded upon conflicting evidence only for the purpose of determining whether it is supported by competent evidence and whether it is contrary to law and not for the purpose of determining the weight of the evidence, and whether the evidence reasonably tending to prove the essential facts in a case, either directly or indirectly, or by permissible inferences, is sufficient to sustain a verdict and judgment based thereon. Cities Service Gas Co. v. Eggers, 1940, 186 Okl. 466, 98 P.2d 1114, 126 A.L.R. 1278 and cited cases.

██ Defendants' first contention that the court erred in refusing defendants' request to have the jury view the premises is without merit. The evidence and circumstances of the case do not reveal an abuse of discretion. Under 12 O.S.1951 § 579, permitting a jury to view property which is the subject of the action is within the discretion of the trial judge, whose ruling will not be a cause for reversal in the absence of a showing of an abuse of discretion. See Phillips Petroleum Co. v. Malone, 179 Okl. 449, 66 P.2d 5, and 53 Am.Jur., Trial, Secs. 441–442. Also Denver Producing & Refining Co. v. Meeker, 199 Okl. 588, 188 P.2d 858, and cited cases.

Defendants' second proposition is that plaintiff failed to sustain the burden of separating the damages resulting from permissive and non-permissive pollution, which precludes recovery against the defendant Phillips Petroleum Company. However, plaintiff contends that any failure of the plaintiff to make a separation of so-called permissive and non-permissive pollution attributable to operations of defendants on plaintiff's land does not constitute reversible error.

The record discloses that the defendant Cities Service Oil Company and its predecessor have owned and operated the oil and gas lease covering the entire 160 acres which includes plaintiff's land. Salt water produced on this leased land contributed to the pollution of plaintiff's water wells. It is argued that some of the damage was caused by salt water from the leased premises flowing over and across that portion of the surface of the leased premises reasonably necessary to the development of the land for oil and gas purposes.

The above stated proposition is not urged in behalf of the defendants, Cities Service and Ives. However, as to the burden of separating damages, it is contended that the situation is different as to the defendant, Phillips Petroleum Company, as the pollution charged to it comes only from its Berg lease, through a tributary of the west branch of Crooked Oak Creek. Plaintiff's expert evidence was to the effect that the west branch of Crooked Oak Creek also contributed to the pollution of plaintiff's water wells. Therefore, under these circumstances, it is contended that the issue is squarely presented as to the amount of damages resulting from the reasonable and necessary operations under the oil and gas lease covering plaintiff's land; and any contribution to the pollution of plaintiff's water wells resulting from the reasonable and necessary operations under the oil and gas lease is not a violation of the statute, citing 52 O.S.1951 § 296, and Pure Oil Co. v. Chisholm, 181 Okl. 618, 75 P.2d 464. It is argued that such pollution is chargeable to plaintiff under the license of said oil and gas lease, and in such circumstances the burden is placed upon the plaintiff to separate such permissive pollution from the non-permissive pollution which she claims resulted from the operations of the defendant Phillips Petroleum Company. In this contention it is contended that the plaintiff failed to produce evidence sufficient to enable the jury to separate the damages resulting from the reasonable and necessary use by the defendant Cities Service Oil Company of the land covered by its oil and gas lease.

Under proposition two, subdivisions "A" and "B", it is further contended that no instructions were given by the Court covering the issue relating to separation of damages or as to the burden of separating damages, and that the Court refused to give the requested instruction on this issue, thereby committing reversible error as to Phillips Petroleum Company.

We do not agree with the theory of defendants' second proposition. But we do,

however, under the facts and circumstances, think that plaintiff's counter-proposition has merit. We think, as stated by plaintiff, that everything was eliminated from the case which could be said to be permissive pollution. The plaintiff waived all claim to damages arising out of captive or impounded pollution on the plaintiff's land. The record shows that "The plaintiff elects to withdraw (her) claim of negligence as to said skimming pit and only consider that nuisance after it is permitted to flow across the land and through the natural watershed as a part of the natural drainage system of plaintiff's lands." In other words, the damages claimed are confined exclusively to those which were occasioned by the nuisance arising out of the flow across the plaintiff's land natural drainage system. Moreover, the trial court instructed the jury, under written Instruction No. 9, that the jury could "not consider any of the pollution or contamination that may have occurred or arisen out of the erection, maintenance or operation of the skimming pit or its connecting drainage ditch to the point where salt water therefrom, if any, enters into a tributary of the east branch of Crooked Oak Creek."

All parties tried this case on the theory that all tort feasors who materially contribute are held liable for the entire damage. Defendants did not urge any necessity or theory for separation at the trial; rather their position is shown by their requested Instruction No. 13 by which they requested that if the jury found that salt water produced from plaintiff's land had entered the fresh water strata so as to render it unfit for domestic purposes, and the amount of salt in such water-bearing strata was not increased by salt water from the pond adjacent to the east quarter of plaintiff's land, then the verdict should be for the defendants.

■■ In British-American Oil Producing Co. v. McClain, 191 Okl. 40, 126 P.2d 530, 531, cited to the trial court in support of the requested instruction and which was

refused, this court held in the first two syllabi that:

"1. Where the separate and independent acts of several parties combine to produce directly a single injury, though concert of action is lacking, such parties are jointly and severally liable for the result even though the act of each alone might not have caused the injury.

"2. Where the facts show that a lawful business is being conducted in such manner as to constitute a private nuisance causing substantial injury to property, the aggrieved party may recover compensation for the injury sustained."

Moreover, this court said in the British-American case, supra: "The action was based entirely on negligence * * *. Nuisance was not involved." The case at bar was submitted to the jury solely on the nuisance theory—not on negligence.

■ The defendants are bound by the theory on which the case was defended below. They may not urge on appeal for the first time, as they attempt to do, a theory different from that on which they submitted to the trial court.

■ In Cimarron Valley Pipe Line Co. v. Holmes, 182 Okl. 450, 78 P.2d 403, in the first paraagraph of the syllabus, we said:

"A party on appeal in the Supreme Court will not be permitted to secure a reversal of a judgment upon error which he has invited or acquiesced in, or assume a position inconsistent with that taken in the trial court."

■ The burden of showing a separation, if any was required, rested on defendants. Pure Oil Co. v. Chisholm, supra.

The record further discloses that defendants Cities Service Company and Earl E. Ives moved and requested the trial court to withdraw from the jury any consideration relating to damages resulting from the manner in which the wells of Cities Service were plugged and operated. The motion was made by an attorney who was also representing Phillips Petroleum Company, as well as the other defendants. No objection was made as to Phillips Petroleum Company. At no time in the trial was it ever contended that plaintiff owed any duty to separate any of the aggregate pollution damages. The plaintiff, in order to keep the record as to all uniform, elected to drop similar claims as to Phillips Petroleum Company.

In no pleading did Phillips or any defendant seek a separation of so-called permissive pollution or the elimination of any lease. Phillips and Cities Service defended the case as one.

■ An examination of the instructions given and refused reveals that the court's instructions as a whole fairly and justly presented the issues to the jury. Finding no fundamental errors substantially affecting the rights of the defendants, we hold defendants' contentions under their second proposition to be without merit.

To the defendants, Cities Service Oil Company and Earl E. Ives' third proposition hereinbefore quoted, the plaintiff interposes the counter proposition that "(T)he uncontradicted evidence showed that the nuisance did exist and that it had existed for many years."

Cities Service Oil Co. and Earl E. Ives, defendants, contend under this proposition (III) that they are not liable to the plaintiff for salt water damage occurring on the plaintiff's land covered by their lease unless it was caused by negligence in the oil operations, and that such principle is not abrogated by the Oklahoma Statute relative to nuisances; admitting, however, that they are well aware of the doctrine of liability without proof of negligence applicable to a violation of 52 O.S.1951 § 296 as announced in Comar Oil Co. v. Lawrence, 151 Okl. 187, 3 P.2d 196, and cases of like import cited by plaintiff.

Defendants argue that plaintiff over their objections, at the close of the trial, elected to withdraw her claim of negligence as to

the skimming pit on said lease covering her land and consider the operations only as a nuisance after the salt water from the skimming pit was permitted to enter into the natural stream and drainage system of plaintiff's land; that the court over defendants' objections instructed the jury that plaintiff had abandoned her claim relating to the operation of said skimming pit to the points where the salt water therefrom entered into a tributary of the east branch of Crooked Oak Creek.

The record discloses that the skimming pit referred to is located in the northeast corner of the oil and gas lease; that when the salt water from the skimming pit enters the east branch of Crooked Oak Creek it is still on the oil and gas lease of the defendant (Cities Service Oil Company). The operations of the defendants (Cities Service Oil Company and Earl E. Ives) in handling the salt water on the oil and gas lease covering plaintiff's land remained in the case at least from the point where the salt water from said skimming pit entered into a tributary of the east branch of the creek (Crooked Oak Creek) and from there until the creek left the land of plaintiff.

Under these circumstances and in this connection defendants contend that the trial court erroneously gave the following instruction, to-wit:

"The evidence is uncontradicted in this case that the defendants and each of them have disposed of salt water by running it across their leases and thence into the creek in violation of the foregoing statute, and the Court instructs you that such acts constitute and create what is known in law as a nuisance.

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: Annoys, injures or endangers the comfort, repose, health or safety of others; or, in any way renders other persons insecure in life or in the use of property."

and refused to give defendants' requested instructions on the law of negligence, citing and quoting from Phoenix v. Graham, 1953, 349 Ill.App. 326, 110 N.E.2d 669, and arguing that it was reversible error to submit the case to the jury solely on the theory of nuisance, and refusing to instruct the jury on the law of negligence.

We do not agree. The Phoenix v. Graham case, supra, in which Oklahoma cases are cited, does not sustain the defendants' contention. These cases involved lessors of oil producing realty against operators of oil wells thereon for damages caused by allegedly negligent discharge of salt water only upon the lease lands.

The holding in that case was simply that the evidence on difference in market value of land before and after the alleged injury was too conjectural, in that it merely showed that wells at 13 feet level were contaminated without showing that other wells were available, and it did not support the award of damages of $9,500, and for that reason the cause was reversed and remanded with directions to award a new trial.

The basis of liability for injury or damages to property by pollution of subterranean waters, from oil, gas, salt water or like substances in oil wells must be either negligence or nuisance. United Fuel Gas Co. v. Sawyers, Ky., 259 S.W.2d 466, 38 A.L.R.2d 1261. No negligence is claimed in the present case. Plaintiff herein abandoned her claim of negligence and bases her case solely upon the question of nuisance.

Nuisance and negligence are distinct torts. As a general rule, liability for nuisance does not depend upon the question of negligence, as contended by the defendants, and may exist although there was no negligence. Hence, negligence is not an essential or material element of a cause of action for nuisance and need not be proved. However, negligence, if any, may usually be proved in nuisance cases, even though it is not essential to the right of recovery. 39 Am.Jur., Nuisances, Secs. 4 and 24. See cases cited in footnotes.

The evidence is undisputed that the branches of the Crooked Oak Creek and the Klausmeir pond carried highly concentrated brine for at least twenty years; and that this salty brine water polluted the Garber sandstone which was the source of plaintiff's water wells. This is unquestioned. The salty brine water was admittedly permitted to escape and to cause pollution in violation of the law, which action was not justifiable, as contended by defendants, on the ground that such was the conventional and long standing practice of the producers.

In Cities Service Gas Co. v. Eggers, supra, we held that the owner of land has a right to drill a water well thereon and take therefrom water in its natural state free from salt water pollution, and a judgment allowing damages for the pollution of a water well was affirmed. It was held that there was sufficient evidence to sustain the finding of the jury that the salt water came from the creek into which the defendants, oil and gas companies, for many years released great quantities of water containing salt and other deleterious solids which polluted the land owners' wells.

An expert witness gave an opinion that there was a contact between the water in the creek and the water in the well which was permanently destroyed by the salt water pollution from the creek.

In the opinion we said [186 Okl. 466, 98 P.2d 1117]:

"* * * Except for pollution of the stream by defendants' acts, the replenished supply would have been usable. Pollution of the source is equivalent to pollution of the well itself. * * *"

and held that the destruction of the underground strata of water by pollution constitutes permanent damages to that particular strata and area. Under the jury's verdict supported by competent evidence, the defendants' conduct constituted a continuing nuisance. See Comar Oil Co. v. Richter, 127 Okl. 153, 260 P. 60, and cited cases. And as joint tort feasors each will

be held accountable for the entire resultant damages caused by the salt water pollution of plaintiff's water wells. See Delaney v. Morris, 193 Okl. 589, 145 P.2d 936. See also Annotation, 38 A.L.R. 1282 et seq., and Cities Service Gas Co. v. Eggers, supra, and cited cases. Especially Northup v. Eakes, 72 Okl. 66, 178 P. 266.

Defendants' fourth proposition charges that the instructions on the character and the measure of damages were incorrect.

As hereinbefore indicated, this action was for permanent damages occasioned by a nuisance. The expert evidence was that the subterranean strata were permanently polluted and could not be corrected within a reasonable period of time by any reasonable expenditure of money. The expert testified that from an engineering and geological standpoint when a water well becomes polluted from the salt water polluted strata that there is nothing that you can do to eliminate it for at least a lifetime.

An examination of the instructions on this phase of the case reveals that the jury was properly instructed. The instructions fairly advised the jury the proper measure of damages for permanent pollution within the rules announced in Sinclair Oil & Gas Co. v. Allen, 143 Okl. 290, 288 P. 981, and Darby Petroleum Corporation v. Mason, 176 Okl. 138, 54 P.2d 1046. The instructions left to the jury the determination of whether such permanent damages were in fact sustained.

The instructions given on this issue were fair and correct, and the defendants made no request for any further instructions on the character or measure of damages nor did they submit any requested instruction thereon. The objection on appeal comes too late. See Rudco Oil & Gas Co. v. Lofland, 192 Okl. 256, 135 P. 2d 494, and Taylor v. Scott, 167 Okl. 588, 32 P.2d 48.

In the Rudco case we said [192 Okl. 256, 135 P.2d 497]:

"The instruction given is a substantial statement of the law. However, the defendant in this case did not submit any requested instruction to the trial court on this proposition, nor in any way call the court's attention to any claimed deficiency in the instruction at the trial of the case, therefore defendant is precluded from urging reversal by reason of this instruction."

Defendants' fifth proposition charges that the evidence is too conjectural to sustain the grossly excessive award of actual damages, and principally rely on the case of Phoenix v. Graham, supra.

The amount of the verdict and judgment is hereinbefore stated.

In addition to the outline of the expert's testimony under proposition four relative to the character and measure of damages sustained by plaintiff, his further testimony was that he was of the opinion that the whole immediate area will eventually be polluted; that the time will be different for the different sand lenses because of the fact that the sand is linticular and it's a progressive thing; that the water moves in various ways.

The plaintiff testified that the reasonable market value of the land just before the pollution and nuisance complained of was $1,000 per acre; that the fair market value immediately thereafter was one-half of that amount or $500 per acre. This proof evidenced land damage of $40,000, as plaintiff saw it. On cross-examination she testified that the damage complained of had destroyed the value to the extent of $500 per acre. The further proof was that the new pump cost $400, the 1,800 feet of pipe cost $1,236.97, and the drilling of the additional well cost over $800. These latter were emergency expenditures because plaintiff's rest home located on the land was full of patients, and potable water had to be had and had immediately.

A real estate broker testified that the plaintiff's land was damaged by $28,000 by the salt water nuisance. He testified that the land had a fair market value of $500 per acre before the pollution complained of was sustained and a value of only $150 per acre immediately after the pollution.

In this connection the defendants' answers alleged that if plaintiff's water wells were polluted, that condition resulted from plaintiff's failure to exercise reasonable care in drilling, casing, cementing and maintaining such wells and from plaintiff's carelessness and negligence in permitting pollutive substances to drain into the fresh water sands.

Defendants point out that the evidence reveals that before plaintiff's 300-foot well was drilled, the State Department of Health had advised the plaintiff that the salt content in the water well then on her property was excessive. The Delta Engineering Company had advised her that it would be necessary to drill a new well and recommended that the upper sands in the new well be cased off. They argue that plaintiff was therefore charged with knowledge that the fresh water sands in the 300-foot well would have to be sealed off, and she could not otherwise reasonably expect her 300-foot well to be productive of potable water.

The defendants assert that they tried this case on the theory that adequate quantities of potable water are available to the plaintiff in both of her 165-foot and 300-foot wells, and the condition of which she complains resulted from her own carelessness and negligence, and that other property owners in the area have wells from 110 feet to 800 feet in the vicinity of plaintiff's property which are productive of good potable water.

The defendants' expert witnesses were of the opinion that upper sands in plaintiff's water wells were not sealed off, and the water therefrom was allowed to comingle with the water in the lower water zones.

The well driller who drilled plaintiff's wells testified that the wells were sealed

off, and that the water from the upper strata was not allowed to comingle with the water in the lower water zone.

Thus, we see a conflict in the testimony relative to the issue of damages and the causes therefor.

We agree with plaintiff's contention wherein she argues that the case of Phoenix v. Graham, supra, upon which defendants rely, is not controlling. She asserts that the case is not from this jurisdiction; that the action in that case was grounded on negligence—not on nuisance, as here. Therein, in reply to the defendant's assertion that no negligence had been proved, plaintiff argued that it was not necessary to prove negligence because the impounded salt water constituted a nuisance, but the Illinois Court held that plaintiff could not change the theory of his lawsuit upon appeal. Furthermore, the production of salt water in the Phoenix case had ceased, and the proof was that the brine in the pit could be removed and that natural rainfall would tend to purify the area. But that the proof in the case at bar was that "when a strata becomes polluted, it is permanent, at least in our lifetime. There is nothing that you could do to eliminate it." Finally, in the Phoenix case, there was evidence of the existence of artesian fresh water readily available; that there is no such evidence in the case at bar.

■■ In this state the law is well settled that where injury to real estate from salt water is permanent, the measure of damages is the difference between the value just prior and just after the injury. See Darby Petroleum Corporation v. Mason, 176 Okl. 138, 54 P.2d 1046; Commercial Drilling Co. v. Kennedy, 172 Okl. 475, 45 P.2d 534, and Sinclair Oil & Gas Co. v. Allen, 143 Okl. 290, 288 P. 981. Also, in this case, plaintiff is entitled to reimbursement for emergency expenditures hereinbefore mentioned made to minimize her damages.

■ The judgment is within the limits asked for and is less than the proven damage.

As a final proposition defendants charge that the verdict awarding punitive damages is not supported by the evidence. The evidence in this case showed conclusively that for more than twenty years the defendants had permitted immense quantities of salt water to escape into the creeks in the watershed in reckless and wanton disregard of the consequences. Their claim of lack of personal malice is no defense. The Phillips-Berg Lease was running and flowing into the West Creek approximately 155 barrels of salt water every day. No attempt was made to retain it and to keep it from flowing over the land into the creek. In this circumstance plaintiff argues that it would be difficult to conceive of a more flagrant violation than that which went on in this part of the Oklahoma City field for more than twenty years.

The record discloses that the superintendent of Cities Service testified that he knew that each day salt water in the watershed was permitted to run into the creeks was a violation of the criminal laws of Oklahoma; that notwithstanding the violation of the law no substantial change had been made to prevent this; and that none would be made until a disposal system was installed. Also, the Phillips Company representative testified that he recognized that the salt water flowing from the Berg Lease into the creeks was in violation of the criminal laws of Oklahoma; and that water had been syphoned off salt water pits and into the creeks involved in this litigation since the opening of the Oklahoma City field some thirty years earlier. The Cities Service records showed that that Company had run 6,435,256 barrels of salt water down these creeks from 1948 through 1955, and that it had been done intentionally. That company's geologist testified that it was a "dirty operation";

that he knew that the running of salt water uncontrolled into the east and west branches of Crooked Oak Creek was in violation of the law and that these salt water streams were the most probable and obvious sources of pollution of the plaintiff's water wells.

The secretary of the Oklahoma City Producers Association, by his testimony, attempted to justify the flagrant running of the salt water into the streams by comparing the Oklahoma City field with old oil fields, such as the Hewett, Healdton and Creek County fields. This, it is argued by plaintiff, was tantamount to an admission that the defendants simply turned the salt water loose and let it flow.

The salt content was not marginal; rather it was great. At the confluence of the two branches of the creek, the salt content was 121,900 parts per million, and where the salt water emptied into the bar pit at 70th Street and Eastern Avenue, it tested approximately 239,700 parts per million or 24 percent salt.

An examination of a few of the cases relative to the allowance of punitive damages shows that some punitive damage in the instant case is justified: See Jordan v. Peek, Okl., 268 P.2d 242; and cited cases.

It is obvious from the verdict in the case at bar that the jury concluded that the defendants had acted in gross disregard of the rights of the plaintiff, and that plaintiff was entitled to both actual and punitive damages.

However, we are of the opinion that the verdict and judgment of the trial court should be modified by requiring a remittitur as to Cities Service Company of punitive damages in excess of $1,800, and that the punitive damages against Phillips Petroleum be reduced from $500 to $200, and if such remittiturs are filed within ten days from the date this opinion herein becomes final, the cause is affirmed at the cost of plaintiff in error;

otherwise, the cause is reversed at the cost of the defendant in error.

WELCH, C. J., and DAVISON, JACKSON and CARLILE, JJ., concur.

CORN, V. C. J., and HALLEY and BLACKBIRD, JJ., dissent.