Juanita **NELSON**, Appellant,

v.

**TEXACO INCORPORATED**, a corporation, and **Continental Oil Company**, a corporation, Appellees.

No. 45565.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 15, 1974.

Rehearing Denied March 19, 1974.

·Certiorari Denied July 23, 1974.

Released for Publication by Order of the Court of Appeals July 25, 1974.

Earl E. LeVally, Healdton, for appellant.

R. Rhys Evans, Otey & Evans, Ardmore, John Wimbish, Ponca City, Elmer W. Adams, Tulsa, for appellees.

ROMANG, Judge:

Plaintiff, Juanita Nelson, is the owner of 65 acres of land in which she owns some of the oil and gas rights. The land is located in Carter County, Oklahoma.

Defendant, Texaco Inc., is the oil and gas lessee of the oil and gas rights in plaintiff's land. The oil and gas lease grants a voluntary right of unitization.

Defendant, Continental Oil Co., is the operator of a secondary oil and gas recovery unit which includes plaintiff's land. The said unit was formed pursuant to the Oklahoma Unitization Act (52 O.S.1971, §§ 287.1–287.15), and was duly approved.

In operating said unit, Continental laid pipe lines across plaintiff's land, running from Continental's water production wells east of plaintiff's land, to its station west of plaintiff's land. Continental also installed electric and electric-telemetry lines from such salt water wells to its station, and such lines were across plaintiff's land.

Plaintiff filed this action setting out three causes of action, to-wit: (1) The first cause of action was for a declaratory judgment to determine the relationship and right and obligations of the respective parties; (2) the second cause of action was for permanent damage to her land by reason of salt water and oil pollution; and (3) the third cause of action was for temporary loss of use of portions of her land where Continental had bulldozed trees and brush in clearing two strips across the land.

The second and third causes of action were tried before a jury on October 27 and 28, 1971. At the close of plaintiff's evidence, defendants demurred thereto. The demurrer to the evidence as it related to the third cause of action was sustained, but the demurrer to the evidence as it related to the second cause of action was overruled. The case was submitted to the jury which returned a unanimous verdict for the plaintiff in the amount of $2,000.00. Defendants then made an oral motion in open court for judgment notwithstanding

the verdict. The trial court deferred a ruling thereon until evidence could be heard on the first cause of action.

On February 1, 1972, the trial court, without a jury, heard evidence on plaintiff's first cause of action relating to a declaratory judgment. On the same date the trial court rendered judgment for the defendants, Texaco and Continental.

As relates to the first cause of action for declaratory judgment the trial court decreed that Continental as the unit operator, was the agent of Texaco, and that Continental as such agent "has the same rights but no greater nor no lesser than Texaco, Inc. insofar as the use of the surface of plaintiff's lands are concerned; that Continental Oil Company as such unit operator has placed pipe lines and electric lines across plaintiff's land but has the right to do so, so long as the same do not place an unfair burden upon plaintiff's surface."

As to the second cause of action the trial court found that the defendants' motion for judgment notwithstanding the verdict should be sustained for the reason that "plaintiff's proof fails to establish any damages against the defendants for which plaintiff is entitled to recover."

The trial court reaffirmed its previous ruling as to the third cause of action, and held that the plaintiff had failed to show herself entitled to any relief.

Plaintiff has appealed and contends that the trial court erred as to its rulings on all three causes of action.

As relates to the question on the first cause of action, plaintiff states in her brief as follows:

"The central core of plaintiff's first or declaratory judgment cause boils down to the one issue:

"Must a Unit Operator obtain an easement from the surface owner for its pipe lines and electric lines which completely cross an individual lease?"

Defendants state the question as follows:

"Stripped of unnecessary rhetoric when measured by plaintiff's pleadings and argument, the decisive question appears to be

"Whether the use put to the surface rights in plaintiff's land was in excess of the right to use the same existing in the Velma Camp Deese Unit?"

Plaintiff's principal argument is that the use of plaintiff's surface as a part of and in connection with other unit operations on other leases within the unit area, was to such extent unauthorized and constituted a trespass.

The validity of the Oklahoma Unitization Act has been upheld a number of times by the Oklahoma Supreme Court. Jones Oil Co. v. Corp. Comm., 382 P.2d 751 (Okl.1963).

The Unit Plan under which Continental was operating, provides as follows:

"19. 1 Rights-of-Way. The Unit and Unit Operator shall have an easement and right-of-way on, over and across all of the lands in the Unit Area for the purpose of laying, constructing, building, using, maintaining, operating, changing, repairing and removing pipe lines, tanks, telegraph and telephone lines, water lines and other facilities for the development and operation of the Unit Area for Oil and Gas and for the gathering, handling and disposal of the Unit Production; provided the Unit shall pay all damages to growing crops, commercial timber, fences, improvements and structures on the land resulting from the exercise of the rights and privileges granted by this paragraph."

Section 6.1 of the Unit Plan provides that all leasehold estates included therein, are pooled and unitized "all to the same extent as if the Unit Area had been included in a single lease and all rights thereunder owned by the Lessees in undivided interests."

The Unit Plan further provides:

"6.2 Relationship of Lessees. The relationship between the Lessees within the Unit Area, resulting from the creation of the Unit shall not be that of a trust, partnership or association, but shall be in the nature of a tenancy in common."

Plaintiff asserts in her reply brief as follows:

"The most that can be said for unitization then is that it brings about a situation such as would occur if one oil company owned all the leases in a given unit. In the event defendant Texaco had purchased from all other lessees all of the leases within the unit, defendant Texaco could not without a prior easement then have burdened the plaintiff's surface for the benefit of its other leases. Defendant Continental, as Texaco's agent, cannot."

The answer to plaintiff's assertion, is that if Texaco owned all the leases, but there was no unit operation, the oil and gas interests under a particular surface, would not be sharing in the production from other leaseholds. The fact that this is a unit operation provided by law, and there is a sharing in the production from other leases, is what makes the distinction.

■ If plaintiff's contentions were upheld, the whole intent and purpose of the unitization law (52 O.S.1971, §§ 287.1–287.-15) could be defeated by one or more recalcitrant surface owners within a unit area. As we interpret the law, the Unit Operator has the right to use any surface within the unit for the purpose of efficiently carrying out the approved unit plan, so long as such use is reasonable and not unduly burdensome to any particular surface area.

■ The answer to plaintiff's question is that a Unit Operator does not have to obtain an easement from the surface owner for its pipe lines and electric lines to be laid or constructed completely across an individual lease within the unit area.

We affirm the trial court judgment as to the first cause of action.

As pertains to plaintiff's second cause of action, the Journal Entry of Judgment reads in pertinent part as follows:

"2. *Particularly as to Second Cause of Action,* with respect to claims for damages arising by virtue of defendants' operations on and in the lands described in plaintiff's Petition, plaintiff's proof fails to establish any damages against the defendants for which plaintiff is entitled to recover and the Court finds that the verdict of the jury in this case should not be accepted but the same is rejected by the Court; that the same is without sufficient evidence in law or fact to sustain the same and that the defendants' Motion for Judgment notwithstanding the verdict, should be granted and is hereby granted and it is ordered that judgment be and is hereby entered in favor of the defendants and against the plaintiff on said Second Cause of Action."

The transcript of the hearing on February 1, 1972, shows the following comments by the trial judge:

". . . I feel like the plaintiff did suffer some damage, which the jury so found. However, unfortunately, and this is what is bothering me, there is no testimony to substantiate the exact amount of that damage.

\* \* \* \* \* \*

". . . However, I do feel like, or at least I feel like the jury had the right to determine that there was some damage and from fault on the part of the defendant. I do feel like unfortunately they were not given an adequate base to determine the exact amount as the law requires. So, I will so hold."

■ The record before us does not reveal any motion for an instructed verdict, and there was no motion for new trial.

In McInturff v. Okla. Natural Gas Transmission Co., 475 P.2d 160 (Okl.1970), the opinion reads as follows:

"The pertinent law with respect to motions for judgment notwithstanding the verdict is contained in the following portion of 12 O.S.1961, § 698:

" 'When a motion for a directed verdict which was made at the close of all of the evidence should have been granted, the court shall, at the request of the moving party, render judgment in his favor though a verdict has been found against him. * * * ' "

In Stillwater Milling Co. v. First Nat. Bank of Wewoka, 391 P.2d 807 (Okl.1964), the court syllabus states:

"Where the evidence is insufficient to support a verdict against one of several defendants, the trial court is authorized under Title 12 O.S.1961 Section 698 to sustain a motion of such defendant for a judgment notwithstanding the verdict (or to grant a new trial if the successful party shows himself entitled thereto) pursuant to provisions of such statute."

In Dover v. Smith, 385 P.2d 287 (Okl. 1963), the Oklahoma Supreme Court held in the syllabus as follows:

"When a jury has returned its verdict the trial court is without jurisdiction to enter judgment non obstante veredicto unless the party in whose favor such judgment is sought would be entitled to judgment on the pleadings, or the jury has returned special findings of fact contrary to the general verdict."

Defendants do not contend. and the record does not show that the defendants were entitled to judgment on the pleadings. The jury verdict for the plaintiff was a general verdict, and there were no special findings of fact.

The trial court entered judgment notwithstanding the verdict, when as a matter of law it lacked jurisdiction to enter judgment non obstante veredicto.

■ Also, this court having examined the entire record, finds that there is competent evidence to sustain the verdict of the jury. The second cause of action being an action of legal cognizance, the verdict of the jury must be sustained thereon, in the absence of any errors of law, when there is any competent evidence to sustain it. St. L.-San Fran. R. Co. v. Pinkston, 420 P.2d 537 (Okl.1966).

The plaintiff, Mrs. Nelson, testified as to her land being damaged by salt water on two different occasions. On one occasion she found that salt water had come down and across her land from a break in a salt water line which crossed her land but which broke about 300 feet off her land and uphill. She testified that it killed grass and trees "around close to ten acres."

Plaintiff testified regarding a second break in the salt water line and that she found salt about a block farther down the creek on her land than during the first break.

Plaintiff also testified as to oil pollution and damages on her land. In one of her answers she said:

"A: I found, uh, at each well—now you can take any of them—that there was oil out beyond the working area. The grass was dead. There are trees dead. There are wild berries, patches that have been destroyed. Uh, there's, as I said there was pipes and sucker rods laid out there. And as I was walking the area, I heard a spewing sound, and between the number 1 well, and number 3, there had one time been a battery there. The line—this was screwed open and a shooting out over my property."

Plaintiff further testified as follows:

"Q: Could you give us a statement of the amount of your land that has been polluted by oil and salt water and these substances? Which you have testified to this morning.

A: Including the bulldozing and washing, land of that?

Q: Yes Ma'am.

A: On my 65 acres?

Q: Yes Ma'am.

A: (Pause) That would be a hard guess, but I'm going to make it. Somewhere around 20 acres is gone."

Plaintiff's tenant also testified about seeing water run onto plaintiff's land, and that the water left "white salt marks on the ground." He also testified as follows:

"Q: Now, what—are there piles of brush, wind rows of brush, on the land, somewhere up towards the south end of it?

A: Yes sir.

Q: How tall are they?

A: Oh, I just guess, I would say probably 8 feet tall, but I didn't measure.

Q: What did the piles consist of?

A: Logs and trees."

Plaintiff had previously testified as follows:

"A: When they bulldozed those right of ways for the lines. One of them has pipe going across it, across there; and, as I said there's a skip of about six or eight foot, and they bulldozed another off through—that took timber and trees. Now, it is scattered, there is two piles, one on the east side of the creek and one on the west side of it—well, you know how tall a cottonwood tree grows, elms, and things like that on the creek. Now, they are stacked up there. And, uh, Mr. Hill who was with me one day said that they would get rid of it."

Plaintiff further testified:

"Q: In the period covered by the complaint here before this jury, what was this land worth in December 1966, prior to the time of these things which you complain of?

A: Just—oh—there have been a lot of buyers come by, and, uh—before that—I don't know just how long or anything. I was offered Two Hundred and Fifty an acre, for the bottom land."

On cross-examination of plaintiff, we note the following:

"Q: What did you say it was worth, though; it was worth Two Hundred and Fifty Dollars in your opinion, in '66, per acre; what would you say it was worth in 1968?

A: It would be pretty low.

*    *    *    *    *    *

"Q: All right. We are going to say it is poor land in your opinion, now what value would you put on it then?

A: Sixty Dollars an acre, if I put any."

In Pure Oil Co. v. Chisholm, 181 Okl. 618, 75 P.2d 464 (1937), the court syllabus reads as follows:

"Section 11580, O.S.1931 (52 Okl.St. Ann. § 296), is a penal statute and a violation thereof resulting in injury to another constitutes actionable negligence.

"Where an oil and gas producer operates oil and gas wells upon two separate and independent properties, he may not permit salt water from one of said properties to flow over the lands in the other property without being responsible to the owner of the second property for any damages which may result therefrom, and where such operator mingles the water from both properties, and is thereafter sued for resulting damages, the burden of showing any separable items thereof is upon such operator."

In the opinion of this court there was ample evidence to support the verdict of the jury awarding $2,000.00 to plaintiff for permanent damages.

The judgment of the trial court as relates to plaintiff's second cause of action, is hereby reversed with direction to enter

judgment on the verdict for the plaintiff in the amount of $2,000.00 with interest thereon at the rate of 10% per annum from October 28, 1971 until paid, and for all court costs including the costs of this appeal.

This leaves for consideration the third cause of action for temporary damages, which was tried to the jury and on which the trial court sustained defendants' demurrer to the evidence.

 The evidence shows that there were piles of trees and brush about 8 feet high, which defendants had bulldozed in cutting two strips through plaintiff's land for pipe lines and electric lines, and that the piles of timber and brush had been on the land about five years at the time of trial.

In Pulaski Oil Co. v. Conner, 62 Okl. 211, 162 P. 464, the opinion reads as follows:

"While an oil and gas lease carries within its implications, if not within its expression, such rights as to the surface as may be necessarily incident to performance of the objects of the contract, yet it is well settled that the implications go no further, and that the holder of a mining or oil and gas lease must protect the surface of the ground in so far as such incident necessity does not exist."

In Condo v. Beal, 424 P.2d 48 (Okl. 1967), the court syllabus states:

"In an action of legal cognizance a demurrer to plaintiff's evidence or motion for directed verdict should be overruled unless there is an entire absence of proof tending to show a right to recover; and, in passing upon a demurrer to the evidence or motion for directed verdict, the trial court must consider true all of the evidence favorable to the party against whom the demurrer or motion is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant or movant."

We note in the record the comment of the trial judge with reference to the third cause of action, to-wit:

"I sustained the demurrer to the temporary loss, not that it didn't occur but that they didn't prove how much it was."

In this regard, the plaintiff having proved the temporary damages, such as the eight foot high piles of trees and windrowed brush on the land for a period of five years, it was then a question of fact for the jury to determine the amount of her damages. Plaintiff does not have to prove an exact dollar amount.

We are of the opinion that there was sufficient evidence to support a finding of substantial temporary damages to the land.

The sustaining of defendants' demurrer to the evidence as to the third cause of action, is hereby reversed, and the third cause of action is remanded for new trial.

Affirmed as to first cause of action, reversed with direction as to second cause of action, and reversed as to third cause of action with new trial ordered.

BOX, P. J., and BAILEY, J., concur.